752 P.2d 507

**Charles E. BAIRD and Betty Baird, husband and wife, Third–Party Plaintiffs/Appellees,**

v.

**Thomas M. PACE and Jane Doe Pace, husband and wife; Lawrence M. Hecker and Jane Doe Hecker, husband and wife; Steve W. Phillips and Jane Doe Phillips, husband and wife; dba Hecker & Phillips, a general partnership, Third–Party Defendants/Appellants.**

**No. 2 CA–CV 87–0140.**

Court of Appeals of Arizona, Division 2, Department A.

Dec. 31, 1987.

Review Denied April 26, 1988.

Robert A. Kerry, Tucson, for third-party plaintiffs/appellees.

Slutes, Sakrison, Even, Grant & Pelander, P.C. by Tom Slutes, Tucson, for third-party defendants/appellants Hecker & Phillips.

## OPINION

HATHAWAY, Judge.

This is an appeal by an attorney (Pace), defendant in a legal malpractice action brought by appellees (Baird). In 1980, pursuant to a sales agreement, Baird sold a liquor license to Elmer Carrier and Pamela Maxwell. He received a promissory note from the purchasers, and the parties filed a Statement of Legal and Equitable Interest with the Arizona Department of Liquor Licenses and Control, in accordance with A.R.S. § 4–112(B). Baird's attorney, Pace, did not file a financing statement with the Secretary of State. In 1981, Carrier entered into a lease agreement with Landon, performance of which was secured by an agreement which granted Landon a security interest in the same liquor license. A financial statement was filed with the Secretary of 'State pursuant to A.R.S. § 44–3140(A)(3) (now A.R.S. § 47–9401(A)(3)) and a Statement of Legal and Equitable Interest was filed with the Arizona Department of Liquor Licenses and Control. Upon sale to a subsequent buyer, Lynch, Baird obtained a security interest in the license and filed the required financing statement with the Secretary of State. Pace was not Baird's attorney when this transaction occurred. Lynch subsequently sold the license to Tull and Landon obtained a new security interest in the liquor license from Tull, but Landon again filed a financing statement with the Secretary of State while Baird did not.

When Tull defaulted, Landon filed an action to foreclose the interests of all parties in the liquor license, including that of Baird. In the trial court, Landon prevailed against all parties except Baird. Landon brought a special action to this court, and we granted relief, holding that a security interest in a liquor license may be perfected only by filing a financing statement with the Secretary of State, and is not perfected merely by filing a statement of legal or equitable interest with the Arizona Department of Liquor Licenses and Control. *Landon v. Stroud and Baird,* 147 Ariz. 208, 709 P.2d 565 (App.1985). Since at the time of Landon's action Baird had no security agreement with Tull and had not filed a financing statement with the Secretary of State, his interest in the liquor license was subordinate to Landon's perfected interest.

Baird's third-party malpractice action against Pace was based on his alleged negligence in failing to adequately research how to perfect the security interest and where to file it. The case was tried to the court without a jury and the trial court

entered judgment against Pace and his law firm, Hecker & Phillips, for the amount of the debt that remained unpaid and uncollectible because it was unsecured, together with attorney's fees incurred by Baird. We affirm.

Pace argues on appeal: (1) that the trial court's factual finding that he was negligent was not supported by the record, and (2) that his failure to properly file the financing statement was not the proximate cause of the harm Baird suffered.

 Pace argues that the standard of negligence for legal malpractice was not met. We disagree. That standard requires an attorney to act for his client in a reasonably careful and skilled manner in view of his special professional knowledge. *Martin v. Burns*, 102 Ariz. 341, 429 P.2d 660 (1967). He must "... possess such a reasonable knowledge of the law as is ordinarily possessed by other attorneys, and to discover those additional rules of law which, although not commonly known, may be readily found by standard research techniques." 7A C.J.S. Attorney and Client, § 256 (1980) [footnotes omitted]. Whether that standard is met is a question of fact under the circumstances. *Sarti v. Udall*, 91 Ariz. 24, 369 P.2d 92 (1962). At trial, both parties presented expert testimony from local attorneys regarding the "correct" procedure necessary to preserve a security interest in a liquor license. The experts expressed conflicting opinions as to the appropriate procedure.

 Expert testimony is generally used to establish the standard of care by which the professional actions of an attorney are measured and to determine whether the attorney deviated from the proper standard. *Bowman v. Doherty*, 235 Kan. 870, 686 P.2d 112 (1984). The testimony presented, subject to the factfinder's assessment, was a proper basis for the trial court's decision.

The trial court made the following pertinent findings:

> The court finds that Third–Party Defendant PACE neither undertook research nor made reasonable inquiry to determine the correct procedure for perfecting the security interest in the Liquor License.
>
> \* \* \* \* \* \*
>
> The court further finds in the the the [sic] present case, Mr. PACE failed to perform adequate research and thus was unable to exercise the informed judgment to which his client was entitled. He failed to meet the required standard of care, and the court finds that this was a proximate cause of the loss sustained by Mr. and Mrs. BAIRD.

Supportive of those findings is Mr. Pace's testimony at trial in regard to his research in determining the proper place to record Baird's security interest.

> Q. And in determining how to perfect his security interest in the liquor license, did you undertake any research to determine how to do the perfection?
>
> A. Not at that time.
>
> Q. Had you previously undertaken any research in how to perfect a security interest in a liquor license?
>
> A. I had reviewed the liquor regulations at some point in the past, and I'd also, I guess—although that's not research—seen how other people at Trew & Woodford had done it.
>
> \* \* \* \* \* \*
>
> Q. You didn't look at the statutes, in any event; you were relying on your practice at Trew & Woodford; is that right?
>
> A. At Trew & Woodford and O'Connell, Hecker and Phillips, yes.

Three of the lawyers testifying for Baird expressed their opinion that Pace fell below the appropriate standard of care when he failed to secure Mr. Baird's interest in the liquor license by filing a financing statement with the Secretary of State. Mr. Pace's own expert witness, an experienced attorney licensed in 1960 and frequently involved in liquor license transactions, testified that when he first began practicing law, he became involved in a liquor license transfer and set out to determine how it should be accomplished. He prepared by reading the law, checking with other attorneys and inquiring directly with the Di-

rector of the Department of Liquor Licenses to determine the appropriate way to secure an interest in a liquor license being transferred. He also spoke with the brother of the director, a Phoenix attorney, about transferring liquor licenses.

■ Pace cites *Martin v. Burns*, supra, as authority for the proposition that an attorney will not be held liable for a mistake of law or error in judgment regarding a point of law that has not been settled by the highest court of the jurisdiction and upon which reasonable lawyers may differ. He argues that the present case falls within the reasoning of *Martin v. Burns*, providing a basis for overruling the trial court. At first blush, this authority appears applicable; however, there is an important distinction. In *Martin*, there was no settled law upon which the attorney could have relied for guidance, whereas, in the instant case, a pertinent statutory provision exists. It is not important that there was no prior Arizona caselaw on point, because the statutory provision gives the necessary guidance. A.R.S. § 47–9401(A)(3) (formerly A.R.S. § 44–3140(A)(3)) provides that for collateral not falling within specific subsections, certain documents should be filed in the office of the Secretary of State. A reading of the statute clearly reveals that a liquor license is property falling within that category for filing with the Secretary of State.

Arizona caselaw available prior to 1980 provided that, as between a licensee and third parties, a liquor license is a property right with a "peculiar and special value." *Hooper v. Duncan*, 95 Ariz. 305, 308, 389 P.2d 706, 707 (1964); *Nunnally v. Moore*, 116 Ariz. 508, 570 P.2d 195 (App.1977). It is reasonable to deduce that if a liquor license is a form of property, and if it does not fit within one of the specific categories provided in former A.R.S. § 44–3140(A), it must be perfected pursuant to the "catchall" provision and filed with the Secretary of State.

As we noted in *Landon v. Stroud* and *Baird*, supra, the statutory and regulatory provisions pertaining to the filing of statements of legal and equitable interests in liquor licenses did not address the creation or perfection of security interests. As noted above, former A.R.S. § 44–3140(A)(3) states that any collateral not provided for elsewhere in the Uniform Commercial Code should be filed pursuant to the "catchall" provision with the Secretary of State. A.R.S. § 4–112(B) pertains only to the duties of the board and superintendent of the liquor department, not to the procedure required for perfection of a security interest in a liquor license.

Further, Pace's action in filing only with the liquor department did not even constitute a good-faith filing in an improper place, see former A.R.S. § 44–3140(B), because as we pointed out in *Landon:*

> The statement [of legal and equitable interest] merely identifies Baird's interest as arising under an agreement for sale and a promissory note. Nowhere is the term "security interest" or "security agreement" used, despite the directive in the form that the interest be so described and that the reasons for the granting of the interest be set forth.

147 Ariz. at 212, 709 P.2d at 569.

As Baird argues, the safest method for perfecting a security interest, and that advocated by White and Summers, is that an attorney should "... file a financing statement in every conceivable place which could benefit him to do so; or he will buy insurance against the possibility that his client's interest will not be perfected." J. White and R. Summers, Uniform Commercial Code, § 23–12 at p. 943 (2d ed. 1980). Additionally, common precaution suggests the "cover all bases" approach. Pace's expert witness concurred in this theory. It is apparent that Pace's failure to file with the Secretary of State was not brought about by uncertainty as to where to file, but by a lack of research. We concur in the trial court's reliance on *Smith v. Lewis*, 13 Cal. 3d 349, 359, 361, 118 Cal.Rptr. 621, 627–628, 530 P.2d 589, 595–96 (1975), where the following reasoning was found persuasive:

> If the law on a particular subject is doubtful or debatable, an attorney will not be held responsible for failing to anticipate the manner in which the uncer-

tainty will be resolved. [citation omitted] But even with respect to an unsettled area of the law, we believe an attorney assumes an obligation to his client to undertake reasonable research in an effort to ascertain relevant legal principles and to make an informed decision as to a course of conduct based upon an intelligent assessment of the problem.

\* \* \* \* \* \*

Even as to doubtful matters, an attorney is expected to perform sufficient research to enable him to make an informed and intelligent judgment on behalf of his client.

 Pace also contends that even if he was negligent in not properly filing a financing statement in 1980, his negligence was not the proximate cause of Baird's later injury because of Baird's "consent" to subsequent transfers of the liquor license. He relies upon A.R.S. § 44-3127(B) (now A.R.S. § 47-9306(B)) to support this argument. That subsection provides in part:

> [e]xcept where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor *unless his action was authorized by the secured party in the security agreement or otherwise ...* (Emphasis added).

We disagree. As a result of Pace's failure to perfect Baird's security interest in the license at the time of the original conveyance to Carrier and Maxwell, Baird was thereafter relegated to second position behind Landon. Neither the withholding of consent to subsequent transfers nor anything Baird's attorney, Chayet, could have done would have changed that. Pace suggests that there was a gap between the transfer from Lynch to Tull and Landon's filing of Tull's financing statement during which Baird could have obtained a security interest and filed ahead of Landon. First, although the Lynch–Tull agreement is dated two months before the date of filing, it is unclear exactly when the license was actually transferred, i.e., when the department approved the transfer. Second, Baird had no way to compel Tull to give him a security interest in the license. As for Pace's claim that Baird should have accelerated payment of the Carrier/Maxwell promissory note upon the sale to Lynch, such an action may or may not have been successful and, in any event, would have left him in second position behind Landon. The court was correct in finding that Pace's negligence was the proximate cause of Baird's damages.

■ The judgment is affirmed. Appellees will be not awarded attorney's fees on appeal as requested. Absent a special contractual agreement between those in a professional relationship, a professional malpractice action does not "arise" from contract, but from tort. *Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 519, 747 P.2d 1218 (1987).

HOWARD, P.J., and LACAGNINA, C.J., concur.