943 P.2d 747

Donald E. COLLINS; Financial Placements, Inc., a Missouri corporation; Mildred Colletta; Equity Reclamations, Inc., an Arizona corporation; and Lawrence Grinnell, Plaintiffs–Appellants,

v.

MILLER & MILLER, LTD.; Murray Miller and Jane Doe Miller, husband and wife, Defendants–Appellees.

FINANCIAL PLACEMENTS, INC., a Missouri corporation; Mildred Colletta; Equity Reclamations, Inc., an Arizona corporation; and Lawrence Grinnell, Plaintiffs–Appellants,

v.

MILLER & MILLER, LTD.; Murray Miller and Jane Doe Miller, husband and wife, Defendants–Appellees.

No. 1 CA–CV 96–0139.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 24, 1996.

Review Denied Sept. 16, 1997.

Grant, Williams, Lake & Dangerfield, P.C., Phoenix by Mark C. Dangerfield, for Plaintiffs–Appellants.

Felix & Holohan, Phoenix by Brian Holohan and Jennings, Strouss & Salmon, P.L.C. by Gary L. Stuart, for Defendants–Appellees.

## OPINION

SULT, Judge.

This is an appeal from the trial court's grant of summary judgment to appellees on appellants' claim for legal malpractice. Appellants' complaint alleged malpractice sounding in negligence as well as malpractice based on breach of contract. For the reasons set forth below, we reverse the ruling of the trial court on the negligence claim but affirm that court on the breach of contract claim. We also conclude that appellants are not barred by collateral estoppel from litigating the causation element of their claim.

### FACTUAL AND PROCEDURAL HISTORY

In 1972, Pollution Controls, Inc. ("PCI"), a Minnesota corporation, experienced financial difficulties. Appellants Financial Placements, Inc. ("FPI") and Donald E. Collins ("Collins") helped PCI locate funds to remain in business. By promissory note dated August 4, 1972, PCI promised to pay the principal amount of $5,000 and interest in the form of 2,500 shares of PCI common stock to FPI and one Melvyn Bell, with payment due in thirty days. In the event the principal was not paid when due, the payees could opt to receive more PCI common stock as additional interest on the unpaid principal balance.

PCI executed a similar promissory note dated August 28, 1972. The principal amount of that note was $20,000, and the payees were FPI and Collins. This note was payable in six months, and the interest was to be paid in PCI common stock. Again, if the principal was not paid when due, addi-

tional interest was payable in PCI stock. Both notes were executed and delivered in Minnesota.

PCI failed to pay the principal and interest when due under both notes. By declining to attempt to collect on the notes, Collins and FPI in effect exercised their right granted under each note to receive additional interest payable in PCI stock.

Eventually, PCI was merged into Environmental Systems Company ("ESC"), a company whose stock became very valuable over time. In 1989, Collins and FPI hired appellant Equity Reclamations, Inc., ("Equity"), an Arizona corporation, to assist them in recovering, in the form of ESC stock, the principal and interest owed to them under the notes. Later that year, Equity, through its president Lawrence Grinnell ("Grinnell"), contacted appellee Miller & Miller, Ltd., a Phoenix law firm, ("the firm") to discuss representing appellants in the note-collection process.

Before he agreed to be retained by appellants, appellee Murray Miller ("Miller"), a principal of the firm, engaged a Los Angeles law firm to research and assess the effect of the statute of limitations on appellants' claims. The resulting research memorandum indicated that under Minnesota law, the notes most likely would be treated as demand notes with the result that the statute of limitations would not begin to run until actual demand was made. The memorandum cautioned, however, that demand generally had to be made within a "reasonable" time and that "[r]easonableness is a jury question and not easily defined."

On December 1, 1989, the firm and Equity/Grinnell entered into a contract for legal services. The contract called for the firm to "provide reasonable and necessary services" to Equity and Grinnell, including representing them "in litigation to recover assets which belong to them."

By letter dated January 12, 1990, Miller demanded that ESC pay amounts due under the $20,000 note. Miller wrote that he would "take the appropriate and necessary action to protect our clients' interest" if ESC did not respond by January 31. The letter did not refer to the $5,000 note and the record does not indicate whether ESC responded to this letter.

The record does not show that anything else occurred with respect to these notes until, in a letter dated August 25, 1990, Grinnell expressed to Miller his concern about the lack of action on various matters Miller was handling for Equity, including collection of the notes. Grinnell wrote, "Please, I urge you, avoid further delays in the progress of beginning to file these and other suits."

Miller then demanded payment from ESC under the $5,000 note by letter dated September 24, 1990. ESC responded by requesting additional information and noting that it had been almost eighteen years since the notes were issued. There is no evidence that Miller ever responded to this inquiry or provided ESC with more information. In December 1990, Miller engaged the Minnesota law firm of O'Connor & Hannan to assist in collecting on the two notes. On or about March 29, 1991, Miller and O'Connor & Hannan filed lawsuits against ESC in Minnesota state court on the two notes. The actions were thereafter removed to federal district court.

The district court granted summary judgment to ESC in both cases. The court ruled that the statute of limitations on the notes had run some six and one-half years before the lawsuits were filed. The court also found that even if the notes waived the statute of limitations defense, the actions were barred by laches. Finally, the court noted that an August 30, 1972 agreement between FPI and PCI superseded FPI's rights under the notes and discharged the notes.

FPI and Collins appealed to the Eighth Circuit Court of Appeals, which affirmed on statute of limitations grounds but employed a different analysis to reach that result. *Collins v. Environmental Sys. Co.*, 3 F.3d 238 (8th Cir.1993). Applying Minnesota law, the court found that the notes waived the statute of limitations, but that the waiver was effective only for a reasonable time, which the court determined was the six-year interval of the limitations period. *Id.* at 242. Thereafter, appellants had another six-year period in which to make demand, at the conclusion of

which the six-year statute of limitations for suing on the notes began to run. The respective periods were tied to the months in which each note was originally due, namely, September for the thirty-day $5,000 note, and February for the six-month $20,000 note. The court thus found the commencement of the limitations period for the $5,000 note was September 1984 and for the $20,000 note was February 1985. *Id.* at 243. Accordingly, the court held that the six-year limitations period expired in September 1990 for the former and in February 1991 for the latter, making the claims filed in April 1991 on both notes barred by the statute of limitations.[1] *Id.* The court did not address the laches defense or the August 30, 1972 agreement.

In May 1994, appellants filed actions in Maricopa County Superior Court against the firm and Miller and his spouse (collectively "appellees"), as well as the law firm of O'Connor & Hannan. The complaints were for legal malpractice and alleged negligence, breach of contract, and breach of fiduciary duty. The two cases were consolidated, and the firm of O'Connor & Hannan was ultimately dismissed for lack of personal jurisdiction.

Appellees moved for summary judgment, arguing that under the unsettled point of law doctrine, they were not liable for good faith errors in judgment on an uncertain point of law. They maintained that Miller could not have predicted the Eighth Circuit would adopt the statute of limitations that it did, and therefore, Miller was not negligent as a matter of law. Appellees further argued that appellants could not provide any proof of causation. They reasoned that since the federal district court held the actions were also barred by either the doctrine of laches or the August 30, 1972 agreement, even if appellants had won on the statute of limitations

issue in federal court, they would have lost on either or both of these other issues. Appellees asserted that since the district court had ruled on these issues, appellants were collaterally estopped from rearguing them in the malpractice action.

The trial court agreed and granted summary judgment in favor of appellees. It applied the unsettled law doctrine, finding that because there was no settled law on which Miller could have relied, he was not negligent as a matter of law. The court also found that no causation existed, adopting appellees' argument in this regard. The trial court did not rule directly on the breach of contract claim until it considered attorneys' fees, at which time it concluded that appellants had argued this claim in their response to appellees' motion and had not prevailed.[2]

After denying appellants' motion for reconsideration, the trial court entered a judgment in favor of appellees that included an award of $22,709.50 in attorneys' fees. Appellants timely appealed.

## ISSUES

1. Was summary judgment properly granted on appellants' negligence claim?

2. Was summary judgment properly granted on appellants' breach of contract claim?

3. Were appellants collaterally estopped from relitigating the issue of causation?

4. Did the trial court err in awarding attorneys' fees to appellees?

## DISCUSSION

### I. The Negligence Claim

Appellants argue that in light of the age of the promissory notes, the uncertainty regarding the statute of limitations, and the

---

1. Appellants' complaints in their malpractice actions allege that the lawsuits to collect on the two notes were filed on March 29, 1991. The Eighth Circuit stated that the lawsuits were filed in April 1991. This discrepancy does not affect our disposition of this matter.

2. Notwithstanding the trial court's somewhat belated disposition of the contract claim, the issue has been fully briefed and argued in this appeal.

We find the record regarding this claim is sufficient, and we therefore address and dispose of it.

With respect to the breach of fiduciary duty claim, it was apparently disposed of in the final judgment entered by the trial court which granted judgment for appellees against appellants without restricting the judgment to fewer than all appellants' claims. Neither party has referred to this claim in this appeal and, consequently, we do not address it.

instructions of the client, a reasonably knowledgeable and diligent attorney in Miller's position would have promptly filed lawsuits to collect on the notes. In their view, the trial court misapplied the unsettled law doctrine because, under that court's logic, Miller had no duty to file suit within any particular time period due to the uncertainty as to the statute of limitations. Appellants assert that precisely because of this uncertainty, a reasonably knowledgeable and diligent attorney would have taken the precaution of promptly filing suit, rather than assuming that a lengthy delay in initiating the action would make no difference.

Appellees respond that Miller was not negligent because the statute of limitations vis-a-vis these notes was an unsettled point of law, and consequently, he had no reason to know it was about to expire. Appellees maintain that since Miller could not have anticipated the Eighth Circuit's ruling on the applicable statute of limitations period, he cannot be held liable for his failure to timely file.

In reviewing a grant of summary judgment, we view the facts and inferences therefrom in the light most favorable to the party against whom judgment was entered. *AROK Constr. Co. v. Indian Constr. Servs.*, 174 Ariz. 291, 293, 848 P.2d 870, 872 (App. 1993). We must consider whether genuine issues of material fact exist and whether the trial court correctly applied the substantive law. *Jordan v. Burgbacher*, 180 Ariz. 221, 225, 883 P.2d 458, 462 (App.1994). In conducting our review, we determine *"de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Gonzalez v. Satrustegui*, 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App.1993).

■ In the context of reviewing a summary judgment on a claim for attorney negligence, we inquire whether the plaintiff has established triable issues of fact regarding the following:

(1) the existence of an attorney-client relationship which imposes a duty on the attorney to exercise that degree of skill, care, and knowledge commonly exercised by members of the profession;

(2) a breach of that duty;

(3) that such negligence was a proximate cause of resulting injury; and

(4) the fact and extent of the injury.

*Phillips v. Clancy*, 152 Ariz. 415, 418, 733 P.2d 300, 303 (App.1986). In determining the presence or absence of the requisite skill, care, and knowledge in a particular case, we consider all the facts and circumstances presented. *Sarti v. Udall*, 91 Ariz. 24, 26, 369 P.2d 92, 93 (1962). We are mindful that each case presents unique circumstances and "[i]t is exceedingly difficult, if not utterly impossible, to lay down any general rule which would control the measure of the liability in all cases." *Id.*

■ In connection with the questions of duty and breach, the trial court, in assessing the conduct of Miller, relied on the unsettled law doctrine in finding that appellants had failed as a matter of law to establish a prima facie case of attorney negligence. This doctrine holds that an attorney will not be held liable "for a mistake in a point of law that has not been settled by the highest court of the jurisdiction and upon which reasonable lawyers may differ." *Martin v. Burns*, 102 Ariz. 341, 343, 429 P.2d 660, 662 (1967); *see Molever v. Roush*, 152 Ariz. 367, 372, 732 P.2d 1105, 1110 (App.1986). An unsettled point of law is one on which there is an "absence of precedent, authoritative analysis, and meaningful debate [which] leaves the attorney with his or her judgment as the only reliable tool to resolve the issue." 2 R. Mallen & J. Smith, *Legal Malpractice* § 17.8 at 515 (4th ed. 1996).

In urging affirmance of the trial court on this issue, appellees rely heavily on the holding in *Martin.* An explication of the facts in *Martin* is helpful in assessing the reach of that holding. The case began when Overson sued the Martins and obtained a default judgment against them. The Martins then hired attorneys Burns and Ferrin, who were successful in having the judgment set aside. However, Overson appealed to the supreme court and Burns and Ferrin failed to argue on this appeal that the order setting aside the judgment was nonappealable. Consequently, Overson obtained a reversal of the trial court's ruling. The Martins, now repre-

sented by a new lawyer, then attempted to stay the mandate and challenge the supreme court's decision on the basis that the order was nonappealable. The court, however, refused to hear the argument because the issue had been waived by failing to raise it in the initial appeal.

The Martins then sued Burns and Ferrin, alleging that they had negligently failed to raise as an issue that the order setting aside the default judgment was nonappealable. The trial court ruled against the Martins and on appeal, the supreme court rejected the Martins' argument, noting that prior to the consideration in the underlying case of the appealability of the order, there were no cases in which the question had been presented. The court observed:

> It is clear that a lawyer cannot predict accurately what courts may in the future decide on a point of law. Although the [lawyers] may have been incorrect in believing the order to be appealable, we cannot say that they were guilty of malpractice for this error. The law was not well settled at the time of the appeal that the order there involved was not appealable.

102 Ariz. at 343, 429 P.2d at 662 (citation omitted).

■ Appellees attempt to bring their facts within this general rule from *Martin* by asserting that Miller could not have predicted that the Eighth Circuit would decide that a "one-of-a-kind" eighteen-year statute of limitations applied to these notes. However, appellees do not go beyond this mere assertion and explain why the *Martin* rule should exonerate Miller. As we read *Martin*, it stands only for the proposition that a lawyer cannot be found negligent based SOLELY on a failure to have accurately predicted what the law may be in the future. *Martin* cannot be read to hold that in the face of an unsettled point of law, anything the lawyer may do, or omit to do, is shielded from liability. Rather, appellees' efforts to immunize Miller on the basis of *Martin* illustrate the wisdom of the *Sarti* court's observation that each case presents unique circumstances and "[i]t is exceedingly difficult ... to lay down any general rule which would control the measure of

the liability in all cases." 91 Ariz. at 26, 369 P.2d at 93.

*Martin* is not controlling on the facts presented in this case. Here, the research memorandum prepared for Miller indicated that an action on the promissory notes likely could be filed within a "reasonable time" but what constituted a "reasonable time" was uncertain. Given that information, we believe that a reasonably prudent attorney arguably would have made demands on the notes and filed actions on them shortly after being retained, rather than defer action, without explanation, for nearly sixteen months. Promptly making demands and filing actions would have put the client in the best position to argue that the actions were filed within a reasonable time and thereby avoid the bar of the statute of limitations. We conclude, therefore, that the trial court erred in ruling that *Martin* required a finding of non-liability as a matter of law.

A more helpful precedent is *Baird v. Pace*, 156 Ariz. 418, 752 P.2d 507 (App.1987). The *Baird* court found persuasive, and adopted, the following principles from *Smith v. Lewis*, 13 Cal.3d 349, 118 Cal.Rptr. 621, 627, 530 P.2d 589, 595 (1975):

> If the law on a particular subject is doubtful or debatable, an attorney will not be held responsible for failing to anticipate the manner in which the uncertainty will be resolved.... But even with respect to an unsettled area of the law, we believe an attorney assumes an obligation to his client to undertake reasonable research in an effort to ascertain relevant legal principles and to make an informed decision as to a course of conduct based upon an intelligent assessment of the problem.

*Baird*, 156 Ariz. at 421–22, 752 P.2d at 510–11.

In effect, *Baird* establishes that an attorney is not permitted to do nothing after completing reasonable research. Rather, a course of conduct must be elected based upon an assessment of the facts and law the attorney has at hand. In a given case, doing nothing may turn out to be the proper course of conduct to elect, but that election must be supported by evidence detailing the assessment process in which the attorney engaged

to reach that conclusion. That evidence, in turn, is applied to the standard of care to determine whether the attorney measured up to his professional responsibility. *See id.* at 420, 752 P.2d at 509.

■ With the *Baird* principles in mind, we now examine the evidence to determine whether a genuine issue of fact exists regarding Miller's conduct and whether that conduct fell below the applicable standard of care. It was appellants' burden to produce evidence that would establish the standard of care for an attorney in Miller's position, as well as evidence that Miller fell below this standard. In this connection, appellants did present such evidence in the form of an affidavit of attorney Leroy Hofmann. In Hofmann's opinion, a reasonably competent and diligent lawyer would have concluded that the statute of limitations was uncertain, and that delay in bringing suit could adversely affect his ability to collect on the notes. Hofmann also opined that delay could subject the noteholders to adverse situations such as loss of evidence or death of important witnesses. Hofmann concluded that Miller should have filed the suits soon after December 1989 or, at the very least, before the next anniversary of the due dates of the notes.

Hofmann's affidavit was admissible on the issue of the standard of care. *Baird,* 156 Ariz. at 420, 752 P.2d at 509. ("Expert testimony is generally used to establish the standard of care by which the professional actions of an attorney are measured and to determine whether the attorney deviated from the proper standard."). Moreover, in our opinion, the affidavit is adequate as prima facie evidence of that standard and also adequate to create a fact question as to whether Miller deviated from it. By contrast, there was nothing forthcoming from appellees regarding what Miller did between the time the legal research was received and he was retained in December 1989, and the time the lawsuits were filed in March 1991. That is to say, appellees did not offer any evidence that Miller made "an informed decision as to a course of conduct based upon an intelligent assessment of the problem." *Id.* at 421, 752 P.2d at 510.

■ Appellees assert that the Hofmann affidavit is irrelevant and should be disregarded. They argue that the applicable standard of care in this malpractice action should be that of a Minnesota lawyer. Because Hofmann does not claim to have any expertise on the standard of care in Minnesota, appellees assert that his affidavit is insufficient to create a triable issue on this point.

We disagree that such expertise is necessary. Miller is an Arizona attorney who was retained in Arizona by an Arizona corporation whose president is domiciled in Arizona. The attorney-client relationship was formed in Arizona and conducted primarily in this state. In these circumstances, the standard of care for an attorney is an Arizona standard, and this is the standard on which Hofmann expressed an opinion. *See* Restatement (Second) Conflict of Laws § 145 (1971); *Schwartz v. Schwartz,* 103 Ariz. 562, 564–65, 447 P.2d 254, 256–57 (1968) ("The local law of the state which has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort."), *overruled on other grounds, Fernandez v. Romo,* 132 Ariz. 447, 452, 646 P.2d 878, 883 (1982). We conclude that the Hofmann affidavit was relevant on the issue of Miller's performance. We also conclude that the affidavit created a genuine issue of material fact regarding Miller's adherence to the applicable standard of care that precluded summary judgment. *See Orme School v. Reeves,* 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). We therefore reverse the trial court's finding on this issue.

## II. Breach of Contract

Appellants argue that they also have a valid claim for breach of contract. They assert that Miller's failure to file lawsuits promptly after entering a retainer contract with Equity/Grinnell, and later being asked by Equity/Grinnell to file lawsuits without delay, provides "another wholly independent basis for Miller's liability." Appellees respond that because Miller did not agree to any express undertaking to file a lawsuit on a certain date, appellants do not have a breach of contract claim against them.

In *Lewin v. Miller Wagner & Co., Ltd.*, 151 Ariz. 29, 725 P.2d 736 (App.1986), an action involving accountant malpractice, we faced the question "whether the failure to comport with the legally imposed standard of care also constitutes a breach of the employment agreement." *Id.* at 35, 725 P.2d at 742. In answering the question in the negative, we said:

> [W]here there is a contract for services which places the parties in such a relationship to each other that, in attempting to perform the promised service, a duty imposed by law as a result of the contractual relationship between the parties is violated through an act which incidentally prevents the performance of the contract, then the gravamen of the action is a breach of the legal duty, and not of the contract itself.

*Id.* at 36, 725 P.2d at 743 (quoting *Yeager v. Dunnavan*, 26 Wash.2d 559, 174 P.2d 755, 757 (1946)). This rationale was approved by our supreme court in *Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 519, 747 P.2d 1218 (1987), where the court held that "[a]bsent some special contractual agreement or undertaking between those in the professional relationship . . . a professional malpractice action does not 'arise' from contract, but rather from tort." *Id.* at 524, 747 P.2d at 1223. *See also Environmental Liners, Inc. v. Ryley, Carlock & Applewhite*, 187 Ariz. 379, 387, 930 P.2d 456, 464 (App.1996) ("When it is the gravamen of a legal malpractice claim that a lawyer has violated his implied duty to provide reasonably competent and ethical services, that claim sounds in tort, not in contract. . . .").

■ We recognize that *Lewin* and *Barmat* are not precisely on point since they were concerned with distinguishing between contract and tort in the context of the statutory provision for attorneys' fees in actions arising out of contract. Nevertheless, they are persuasively instructive on the basic question of whether an action in contract can even be maintained in a malpractice setting. Essentially they teach that even where there is an express contract between the professional and the client, an action for breach of that contract cannot be maintained if the contract merely requires generally that the professional render services. Only if there is a specific promise contained in the contract can the action sound in contract, and then only to the extent the claim is premised on the nonperformance of that promise. *See Towns v. Frey*, 149 Ariz. 599, 601, 721 P.2d 147, 149 (App.1986) ("[T]he contract relied upon must itself contain an undertaking to do the thing for the nonperformance of which the action is brought."). *See generally* 1 R. Mallen & J. Smith, *Legal Malpractice* § 8.5 at 588–91 (no cause of action for breach of express contract unless suing for breach of a specific promise).

■ In examining the contract between the firm and Equity/Grinnell, we find that paragraph I(b) contains the only language describing the undertaking by the firm. It states, in relevant part, that the firm "will provide reasonable and necessary legal services to 'Clients' to include . . . representing Clients or their clientele named as plaintiffs in litigation to recover assets which belong to them."[3]

The agreement to provide "reasonable and necessary legal services" is nothing more than a general promise which encompasses the basic duty imposed by law to provide reasonably competent legal services. It clearly lacks the specificity required for a breach of contract action. The only specific promise made in the contract is that the firm will represent the clients in litigation, a promise that Miller fulfilled. That he may have done so in a negligent manner, in violation of the duty imposed on him by law to represent his client in accordance with the applicable standard of care, does not change the gravamen of the action from tort to contract. *Lewin*, 151 Ariz. at 36, 725 P.2d at 743.

■ Appellants nevertheless argue that Grinnell's subsequent written instructions to Miller, when coupled with the retainer contract, provide a basis for a contract action.

---

**3.** The engagement language of this paragraph also referred to such tasks as providing consultation and advice, preparation and review of agreements and documents, assisting and/or negotiating contracts, and consulting with other counsel when necessary.

Appellants offer an agency premise for this conclusion. However, they cite no authority and offer no analysis demonstrating why a failure to follow a client's instructions, issued subsequent to and separate from a creation of the retainer contract, constitutes a breach of that contract.

We note that the instructions here were not limited solely to the subject promissory notes, but included other cases covered by the retainer contract. The plea to avoid delay in filing suit referred generally to all cases covered by the contract. Moreover, no particular date by which to file suit on any of the cases was expressed. Most importantly, the letter itself did not constitute a contract because there was no assent to its contents by Miller. Viewed in this light, appellants' argument is reduced to an assertion that two documents, the letter and the retainer agreement, neither of which contained a specific promise, can, when coupled together, constitute a contract to perform a specific promise. We fail to see any logic in this and agree with the trial court that there was no basis for appellants' breach of contract claim. We therefore affirm the trial court's finding on this issue.

### III. Collateral Estoppel and Causation

Appellees urge as an alternate ground for affirmance that even assuming there is a triable issue of attorney negligence, appellants cannot prevail because they cannot prove causation. They argue that the district court had already ruled that the actions were barred by laches and the superseding effect of the August 30, 1972 agreement, and that this ruling collaterally estopped appellants from relitigating these issues in the malpractice litigation. Appellees posit that since appellants could not reargue these issues, they could not show that Miller's conduct caused them any damage.

Appellants respond by pointing out that the Eighth Circuit did not address these issues in its opinion, and thus there is no ruling from that court on which to base an estoppel argument. They also argue that at the district court level, the ruling on these issues was not essential to the judgment rendered by that court. Thus, appellants conclude, the district court's ruling on laches and the effect of the subsequent agreement was not a final judgment for collateral estoppel purposes.

■ In establishing causation in a legal malpractice action, "the plaintiff must prove that but for the attorney's negligence, he would have been successful in the prosecution or defense of the original suit." *Phillips*, 152 Ariz. at 418, 733 P.2d at 303. To do so, the plaintiff must convince the trier of fact in the malpractice suit that a reasonable judge or jury would have decided in his favor in the underlying action but for the attorney's negligence. *Id.* Appellants would necessarily fail in this endeavor if they are collaterally estopped from urging in this action that their suits in the Minnesota district court would not have been barred by laches or the 1972 agreement. If this is the case, then lack of causation from Miller's alleged negligence is established as a matter of law.

■ We first consider which forum's law to apply to this issue of collateral estoppel and, in so doing, we must consider the factors set forth in *Schwartz v. Schwartz*, 103 Ariz. at 564–65, 447 P.2d at 256–57.[4] *See Wendelken v. Superior Court*, 137 Ariz. 455, 457, 671 P.2d 896, 898 (1983) (the *Schwartz* factors must be evaluated according to their relative importance with respect to the particular issue). As we have previously noted, the conduct alleged to have caused the injury occurred primarily in Arizona, appellees and two of the appellants are domiciled and/or incorporated in Arizona, and the relationship between appellants and appellees originated in Arizona and was conducted primarily in this state. On these factors, we conclude

4. *Schwartz* set forth these factors from the Restatement as important contacts to consider in determining relationship. These are: (a) the place where the injury occurred, (b) the place where the conduct occurred, (c) the domicile, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

that it is appropriate to apply Arizona law in resolving this issue.[5]

■ In Arizona, the elements necessary to invoke collateral estoppel are:

(1) the issue was actually litigated in a previous proceeding;

(2) there was a full and fair opportunity to litigate the issue;

(3) resolution of the issue was essential to the decision;

(4) a valid and final decision on the merits was entered; and

(5) there is a common identity of the parties.

*Gilbert v. Board of Medical Examiners*, 155 Ariz. 169, 174, 745 P.2d 617, 622 (App.1987); *J.W. Hancock Enter. v. Arizona State Registrar of Contractors*, 142 Ariz. 400, 410, 690 P.2d 119, 129 (App.1984). We focus our inquiry on whether resolution of the laches and superseding agreement issues was essential to the rulings by the federal district court and the Eighth Circuit in the previous proceedings.

■ The district court dismissed the note-collection actions on the ground that the statute of limitations for suit on the notes had run long before the actions were filed. After so concluding, the court noted that even if it had held that the notes indefinitely waived the statute of limitations, the claim would still be barred by laches. It also indicated that FPI's rights under the notes were superseded by the 1972 agreement.

Clearly, the district court's comments on the laches and superseding agreement issues were not necessary or essential to the judgment. At most, those issues were only incidentally decided and the court's statements in connection with those issues had no bearing on the principal ground on which the court dismissed the lawsuit. As for the Eighth Circuit, we agree with appellants that since that court did not even mention these alternative bases for the district court's decision, there is no ruling on which to base estoppel. Considered in this light, we conclude that appellees have failed to establish that resolution of these issues was essential to the prior rulings, and therefore appellants are not barred from litigating the laches and superseding agreement issues.[6]

■ Appellees also argue that assuming collateral estoppel is inapplicable, appellants nevertheless cannot prevail because a consideration of the laches and subsequent agreement defenses on their merits conclusively demonstrates their applicability, thus barring appellants' claims as a matter of law. Appellees claim they presented these arguments to the trial court separately from their inclusion in the collateral estoppel argument. In our review of the record, however, we find that if this argument was raised, it is vague and unsupported by any evidence. Moreover, from an examination of Minnesota law, it appears that the laches argument would be unavailing.[7] In Minnesota, when an action is governed by a statute of limitations, the doc-

---

5. We note in passing that Minnesota law on this issue does not differ in any significant respect from Arizona law and would not yield a different result from the one we reach. *See, e.g., Anderson v. Mikel Drilling Co.*, 257 Minn. 487, 102 N.W.2d 293, 297 (1960) (the doctrine of collateral estoppel applies if the determination of the issue in question in the former action was necessary to the judgment, but does not apply to issues incidentally or collaterally decided); *In re Trusts Created by Hormel*, 504 N.W.2d 505, 509 (Minn. App.1993) ("Collateral estoppel precludes relitigation of issues that are both identical to those issues already litigated by the parties in a prior action and necessary and essential to the resulting judgment.").

6. Appellants presented to this court, as exhibit 10 in their appendix, a memorandum order of the federal district court in Minnesota concerning the collateral estoppel effect of its previous state-

ments regarding laches and the superseding agreement. This order was issued after this appeal was filed; thus, it is not in the record on appeal. Appellees moved to strike the exhibit, and we delayed ruling on the motion until this appeal was considered on its merits. We now grant the motion striking the exhibit, not only because it was not presented to the trial court but also because we may not take judicial notice of a memorandum decision. *Kriz v. Buckeye Petroleum Co.*, 145 Ariz. 374, 377 n. 3, 701 P.2d 1182, 1185 n. 3 (1985).

7. Minnesota law would apply to a resolution of the laches question since the issue would arise in the context of the basic action on the notes. *See Catchpole v. Narramore*, 102 Ariz. 248, 251, 428 P.2d 105, 108 (1967) ("It is the broad, unquestioned rule that the law of the place, lex loci, will govern as to matters going to the basic action.").

398

trine of laches has no application. *Aronovitch v. Levy*, 238 Minn. 237, 56 N.W.2d 570, 573 (1953). Because the Eighth Circuit found that a Minnesota statute of limitations governed to bar the underlying action, the doctrine of laches became irrelevant.

As to the superseding agreement, we do not find in the record either the agreement or any evidence from which the trial court could have determined that the agreement superseded the promissory notes. Therefore, the trial court could not have been in a position to decide, as a matter of law, that the agreement terminated any rights under the notes. Upon remand, appellees may raise this question in a manner that will enable the court to determine the issue on the merits.

On the record before us, the issue of causation remains an open one. Because the trial court determined lack of causation as a matter of law, and because our decision demonstrates that the foundation for that ruling was in error, we reverse the trial court on this issue.

## IV. Attorneys' fees

The trial court awarded fees to appellees as the prevailing party in a matter arising out of contract. Because we have affirmed the dismissal of the breach of contract claim, appellees are still the prevailing party on that claim. However, we have reversed the summary judgment on the negligence claim and the causation issue, and it appears that some portion of appellees' fees awarded by the trial court may have been incurred in connection with these issues. The fee award must therefore be vacated but the trial court may, upon reconsideration following remand, make an award for that portion of appellees' fees actually expended in litigating the breach of contract claim. *See Environmental Liners*, 187 Ariz. at 387, 930 P.2d at 464.

## CONCLUSION

We affirm the dismissal of the breach of contract claim. We reverse the dismissal of the negligence claim and the trial court's

ruling on the issue of causation. We remand this matter to the trial court for further proceedings consistent with this opinion.

VOSS and EHRLICH, JJ., concur.