FILED BY CLERK

OCT 18 2007

COURT OF APPEALS
DIVISION TWO



IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| MARIA A. KEONJIAN, a single person, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | 2 CA-CV 2007-0047 |
| | ) | DEPARTMENT B |
| v. | ) | |
| | ) | **O P I N I O N** |
| TIMOTHY A. OLCOTT, an Arizona | ) | |
| professional corporation; TIMOTHY A. | ) | |
| OLCOTT, a single person, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20055248

Honorable Deborah Bernini, Judge

AFFIRMED

Munger Chadwick, P.L.C.
 By Mark E. Chadwick                                                                    Tucson
                                                            Attorneys for Plaintiff/Appellant

Smith Law Group
 By Christopher J. Smith and E. Hardy Smith                                             Tucson
                                                           Attorneys for Defendants/Appellees

V Á S Q U E Z, Judge.

**¶1**        In this legal malpractice action, appellant Maria A. Keonjian appeals from the trial court's grant of summary judgment in favor of appellee Timothy A. Olcott. Keonjian argues the trial court erred in ruling (1) that her claim was barred by the two-year statute of limitations for tort actions, and (2) that she had no claim for breach of contract and was therefore not entitled to the longer limitations period applicable to contract actions. For the following reasons, we affirm.

## Facts and Procedural Background

**¶2**        Although the pertinent facts of this case are largely undisputed, we view them in the light most favorable to the party opposing the summary judgment motion below. *Hill-Shafer P'ship v. Chilson Family Trust*, 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990). In August 2000, Keonjian and her daughter, Asya Almonte, signed a contract for the construction of a house on real property located in Green Valley, Arizona. The contract provided that the construction costs would be divided between them, with Keonjian paying seventy-five percent and Almonte paying twenty-five percent. In December 2000, Olcott, who had been Keonjian's family lawyer since 1994, agreed to provide legal services in connection with this project. At Keonjian's request, Olcott drafted a deed dividing ownership of the property according to each party's contributions to the construction costs. However, Almonte objected to the first draft of the deed, which gave a seventy-five percent interest in the property to Keonjian and a twenty-five percent interest to Almonte and her husband. Olcott prepared a second draft, which created a seventy-five percent joint tenancy held by Keonjian and Almonte and a twenty-five percent joint tenancy held by Almonte and

her husband. Although Olcott advised Keonjian that there were no material differences between the two drafts, the second draft effectively gave Almonte and her husband a 62.5 percent interest in the property and Keonjian a 37.5 percent interest. Based on Olcott's advice, Keonjian executed this second deed.

¶3 In February 2001, in the course of securing a loan to fund her capital contribution to the project, Almonte asked Keonjian to sign a gift letter. The letter stated that Keonjian had made a gift, valued at "over $300,000," of an undivided 3/4 interest in the property, to herself and Almonte as joint tenants with right of survivorship. Olcott advised Keonjian to sign the gift letter, telling her it was an "internal" letter that could only be used for loan purposes.

¶4 In July 2002, Keonjian learned that the deed she had executed had effectively given Almonte a 62.5 percent interest in the property. Almonte refused to sign a revised deed, and Keonjian sued Almonte and her husband seeking to "remedy all of the problems created by the execution of the deed and the gift letter." In October 2003, the parties entered into a settlement agreement, which they amended the following month.

¶5 Keonjian filed the current action against Olcott on September 16, 2005. In her complaint, Keonjian alleged that Olcott breached his fiduciary duty with respect to both the preparation of the deed and his advice to Keonjian regarding the gift letter and breached his contract to perform legal services. In his answer, Olcott asserted Keonjian's claims were barred by the statute of limitations. On November 8, 2006, both parties filed motions for summary judgment based on the statute of limitations.

¶6        The trial court granted summary judgment in favor of Olcott, finding that Keonjian's claims arose from tort, not contract, and had accrued no later than July 2002, when Keonjian sued Almonte. This timely appeal followed.

**Standard of Review**

¶7        We review a trial court's grant of summary judgment de novo, remaining "mindful that 'the statute of limitations defense is not favored.'" *CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.*, 198 Ariz. 173, ¶ 5, 7 P.3d 979, 981 (App. 2000), *quoting Logerquist v. Danforth*, 188 Ariz. 16, 22, 932 P.2d 281, 287 (App. 1996). Summary judgment is appropriate if there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(c).

**Discussion**

¶8        Keonjian argues the trial court erred on two substantive grounds in granting summary judgment in favor of Olcott. First, she contends that her malpractice claims based on negligence and breach of fiduciary duty did not accrue until the settlement of the lawsuit with Almonte on October 1, 2003, and are thus not barred by the two-year limitations period. Second, she argues she has a valid breach of contract claim against Olcott on which she is entitled to the longer limitations period applicable to contract actions.

¶9        In Arizona, legal malpractice claims are generally governed by the statute of limitations for tort claims in A.R.S. § 12-542, which provides that such claims must be brought "within two years after the cause of action accrues." *See Kiley v. Jennings, Strouss & Salmon*, 187 Ariz. 136, 139, 927 P.2d 796, 799 (App. 1996). Arizona applies the

discovery rule to determine when a cause of action for legal malpractice accrues. *Commercial Union Ins. Co. v. Lewis & Roca*, 183 Ariz. 250, 254, 902 P.2d 1354, 1358 (App. 1995). "[T]he discovery rule applies not only to the discovery of negligence, but also to discovery of causation and damage." *Id.* at 253, 902 P.2d at 1357. Thus, for legal malpractice claims, the limitations period starts to run when the client has suffered harm and knows or should have known that the harm was a direct result of the attorney's negligence. *Id.*

¶10 Keonjian cites *Commercial Union* for the proposition that the statute of limitations does not begin to run until the harm is "impossible to remedy or retract." Drawing on this proposition, she argues her cause of action against Olcott did not accrue until her claims against Almonte were exhausted, because until then the damages caused by Olcott could be remedied by recovering damages against Almonte. Keonjian misinterprets *Commercial Union*. The recovery of damages on her separate claim against Almonte has no bearing on the issue of when her cause of action accrued against Olcott.

¶11 In *Commercial Union*, attorneys at a law firm had erroneously overlooked a relevant case in advising a client about an insurance coverage issue. *Id.* at 252, 902 P.2d at 1356. However, a different attorney representing the client in subsequent litigation advised that the case was distinguishable. *Id.* at 253, 902 P.2d at 1357. Until the court in that litigation ruled against the client and found the overlooked case controlling, the client had not suffered damages even though the negligence had occurred some years before. *Id.* at 256-57, 902 P.2d at 1360-61. As the court noted in *Commercial Union*, until that ruling,

5

"[t]he coverage issue was an open question." *Id.* at 257, 902 P.2d at 1361. Thus, it was in this context that *Commercial Union* used "irremedia[b]l[e] or . . . irrevocable" to describe the "actual and appreciable" harm a plaintiff must sustain before a cause of action for professional negligence can accrue. *Id.* at 254, 902 P.2d at 1358 (citations omitted).

¶12 In the other two cases relied upon by Keonjian, *Glaze v. Larsen*, 207 Ariz. 26, 83 P.3d 26 (2004), and *Amfac Distribution Corp. v. Miller*, 138 Ariz. 152, 673 P.2d 792 (1983), the issue was when a cause of action accrues for legal malpractice that occurred in the course of litigation. *Glaze*, 207 Ariz. 26, ¶ 14, 83 P.3d at 29; *Amfac*, 138 Ariz. at 153, 673 P.2d at 793. In such cases, "'the injury or damaging effect'" of the negligence "'is not ascertainable until the appellate process is completed or is waived by a failure to appeal.'" *Id.* ¶ 15, *quoting Amfac*, 138 Ariz. at 154, 673 P.2d at 794. These cases are distinguishable from the present case, because Olcott's alleged malpractice did not occur during the course of litigation and any harm or damage to Keonjian was immediate and ascertainable. Here, unlike *Amfac* and *Glaze*, there was no prospect that the "[a]pparent damage may vanish with successful prosecution of an appeal and ultimate vindication of the attorney's conduct by an appellate court." *Amfac Distrib. Corp. v. Miller*, 138 Ariz. 155, 156, 673 P.2d 795, 796 (App. 1983), *supplemented by Amfac*, 138 Ariz. 152, 673 P.2d 792.

¶13 In the majority of malpractice cases, "the damage or injury occurs contemporaneously with the malpractice." *Commercial Union*, 183 Ariz. at 256, 902 P.2d at 1360. Keonjian's is just such a case. Any harm arising from the drafting of the deed occurred at the moment she executed it, because it diminished her interest in the property

6

to less than the undivided seventy-five percent she had intended. And any harm she suffered from advice relating to the gift letter arose when she signed it, depriving herself of any right to reimbursement for "over $300,000," which the letter characterized as a gift. Thus, if the facts are as Keonjian alleges, the harm was irremediable or irrevocable at those two points in time because "a future appeal or other court proceedings" would not have enabled her to "avoid[]" such harm. *Glaze*, 207 Ariz. 26, n.1, 83 P.3d at 30 n.1. This is the case "notwithstanding that [her] damages may not have been fully ascertainable at that time." *Id.*

¶14     The "controlling issue" is when Keonjian "became aware or should have been aware of the cause of [her] harm." *Commercial Union*, 183 Ariz. at 256, 902 P.2d at 1360. Keonjian was aware she had been harmed certainly no later than July 2002, when she sued Almonte and her husband. Keonjian's complaint in that action sought damages specifically for alleged misrepresentation with regard to both the deed and the gift letter. But Keonjian contends "the 'who' part of the inquiry was not known on July 2002 because the damages were asserted against the Almontes on that date."

¶15     We need not speculate about whether Keonjian knew or should have known that Olcott was a cause of her harm in July 2002, because her actual knowledge was evident at her deposition on February 20, 2003:

> My lawyer is supposed to tell me: Stop, it's not what you want to be done. But I thought he knew better. He's a lawyer. Who am I to know what I am signing? I am not—I am a layman.
>
>             . . . .

7

> I was paying for the lawyer's bills and everything and he hasn't done the things right. . . . I don't think he's very competent by now.

And she stated in this further exchange:

> Q. Ms. Keonjian, are you aware, if you didn't think the lawyer did his job, you have the right to sue the lawyer for malpractice?
>
> A. Yes, I probably will. You have no idea how many people are complaining about him.

¶16 These statements show Keonjian was aware that any harm she sustained was a direct result of Olcott's alleged negligence. And regardless of whether they demonstrate Keonjian's knowledge at the time she sued Almonte in July 2002, they certainly establish her knowledge at her deposition on February 20, 2003—over two and one-half years before she sued Olcott. The trial court, therefore, did not abuse its discretion in finding Keonjian's cause of action had accrued over two years before she had filed her negligence action against Olcott. That action, filed on September 16, 2005, was thus barred by the two-year statute of limitations, § 12-542, and summary judgment was appropriate.

¶17 We next consider Keonjian's argument that she has a claim against Olcott in contract that is not barred by the two-year limitations period for tort claims. But, as we have already noted, claims for professional malpractice are generally tort claims. *See Glaze*, 207 Ariz. 26, ¶ 9, 83 P.3d at 28; *Kiley*, 187 Ariz. at 139, 927 P.2d at 799. "Only if there is a specific promise contained in the contract can the action sound in contract, and then only to the extent the claim is premised on the nonperformance of that promise." *Collins v.*

8

*Miller & Miller, Ltd.*, 189 Ariz. 387, 395, 943 P.2d 747, 755 (App. 1996).[1] The key word is "nonperformance," and the distinction to be drawn is that between nonfeasance and malfeasance. The fact that an attorney may have carried out a task "in a negligent manner, in violation of the duty imposed on him by law to represent his client in accordance with the applicable standard of care, does not change the gravamen of the action from tort to contract." *Id.*

¶18　　Keonjian argues the facts of this case are similar to *Towns v. Frey*, 149 Ariz. 599, 721 P.2d 147 (App. 1986). In that case, the court permitted a malpractice claim based on breach of contract where a lawyer had failed to negotiate a settlement or file a lawsuit within the applicable statute of limitations, pursuant to an oral agreement. *Id.* at 601, 721 P.2d at 149. Here, there is no evidence of similar nonperformance by Olcott. On the contrary, Olcott prepared a deed and gave legal advice concerning the gift letter. Keonjian attempts in her opening brief to create an issue of nonperformance by too narrowly circumscribing Olcott's duties: "to draft a deed that reflected her wishes and capital contributions and . . . to advise her as to the significance and potential effect of the Gift Letter." However, the fact that Olcott did perform is not disputed; regardless of how Keonjian attempts to frame it, the essence of her claim is that Olcott performed negligently,

---

[1]We note the court in *Collins* also declined to hold that "a failure to follow a client's instructions, issued subsequent to and separate from a creation of the retainer contract, constitutes a breach of that contract." 189 Ariz. at 395-96, 943 P.2d at 755-56. Viewing the facts in the light most favorable to the party opposing the motion below, however, we assume that each of the services in question in this case was governed by a separate oral contract, as Keonjian contends, rather than by a retainer agreement, as argued by Olcott.

not that he failed to perform at all. Thus, the underlying facts do not entail the nonperformance of a specific promise necessary to a breach of contract claim. *See id.* at 601, 721 P.2d at 149.[2] We therefore conclude the trial court did not err in finding that Keonjian has no claim for breach of contract.

**Disposition**

¶19        For the reasons stated above, we affirm the summary judgment.

_____
GARYE L. VÁSQUEZ, Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge


_____
PHILIP G. ESPINOSA, Judge

---

[2]In malpractice cases based on written agreements, we have similarly required nonperformance of an express undertaking, not merely negligent performance, for a cause of action to lie in contract. *Beane v. Tucson Med. Ctr.*, 13 Ariz. App. 436, 438, 477 P.2d 555, 557 (1970). Other jurisdictions make a similar distinction. *See Benard v. Walkup*, 77 Cal. Rptr. 544, 603-04 (1969) (finding failure to file lawsuit within statute of limitations period a breach of contract); *Hill v. Williams*, 813 A.2d 130, 660-62 (2003) (finding refusal to file motions and schedule hearings a breach of contract); *see also Long v. Buckley*, 129 Ariz. 141, 146, 629 P.2d 557, 562 (App. 1981) (finding statute of limitations for breach of written contract did not apply where breach not related to express terms of contract).