**Phillip BOBBITT, et al., Plaintiffs,**

v.

**MILBERG, LLP, et al., Defendants.**

**No. CV 09–629–TUC–FRZ.**

United States District Court,
D. Arizona.

Sept. 18, 2012.

Roger James George, Jr., Amy L. Saberian, Gary L. Lewis, George & Brothers LLP, Guy M. Hohmann, Ryan T. Shelton, Joseph F. Brophy, Hohmann Taube & Summers LLP, Austin, TX, Robert H. McKirgan, Lewis & Roca LLP, Phoenix, AZ, Robert B.

Carey, Hagens Berman Sobol Shapiro LLP, Phoenix, AZ, for Plaintiff.

Douglas J. Pepe, Honey L. Kober, Jeffrey H. Zaiger, Gregory P. Joseph, Gregory P. Joseph Law Offices LLC, New York, NY, Michele Guy Thompson, Peter Akmajian, Udall Law Firm LLP, Kathleen Marie Rogers, Slutes Sakrison & Rogers PC, Tucson, AZ, Donald L. Myles, Jr., Steven Douglas Leach, Jones Skelton & Hochuli PLC, Phoenix, AZ, Steven G. Mesaros, John Anthony Klecan, Noel Christian Capps, Renaud Cook Drury Mesaros PA, Ronald Marc Lehmanm, Gabroy Rollman & Bosse PC, Tucson, AZ, for Defendant.

## ORDER

FRANK R. ZAPATA, Senior District Judge.

Pending before the Court is Plaintiffs' motion for class certification and appointment of class counsel. For the reasons stated below, the motion is denied.[1]

### BACKGROUND

Plaintiffs seek to certify a nationwide class action based on state based negligence and breach of fiduciary duty claims constituting legal malpractice. Plaintiffs' current legal malpractice claims against their former class counsel arise from a nationwide class action litigated in the District of Arizona alleging securities violations based on federal law (the "Underlying Case").

In the Underlying Case, the District Court granted two early motions to dismiss disposing of all of the state and common law claims, and gave counsel the opportunity to file an amended complaint. Counsel filed a notice with the District Court declining to file an amended complaint, and informed the District Court that it intended to only pursue the federal securities claims. The claims at issue in the Underlying Case were asserted against VALIC which was a major company in the annuities industry. VALIC sold annuities throughout all fifty states and it had more than one million customers. In the Underlying Case, plaintiffs claimed that VALIC representatives unreasonably induced clients to purchase tax sheltered annuities in situations where investments already received tax protected status (i.e., in retirement accounts, etc.); the clients were forced to pay a premium for these annuities, paid more fees over time, but received no benefit as the investments were already tax protected. Defendants filed a motion for summary judgment which was denied by the District Court. The District Court also summarily granted the motion for class certification in the Underlying Case without giving any explanation for certifying the nationwide federal securities class action. Prior to issuing an Order directing notice to the class and prior to issuing a follow up Order explaining the basis for class certification, it came to the District Court's attention that plaintiffs in the Underlying Case failed to meet the deadline set by the District Court for expert disclosures. As such, the District Court struck plaintiffs' experts, found that plaintiffs could no longer establish class wide damages, and therefore decertified the class; plaintiffs appealed, but the District Court was affirmed by the Ninth Circuit. Arising from these circumstances, Plaintiffs allege legal malpractice against their former class counsel (Milberg, as well as separate counsel from Washington D.C. and Arizona) based on negligence and breach of fiduciary duties; they now seek to certify the same nationwide class of plaintiffs that was summarily certified by the District Court in the Underlying Case.

### STANDARD FOR CLASS CERTIFICATION[2]

Pursuant to Fed. R. Civ. Proc. 23 ("Rule 23"), the requirements for class certification are:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

---

1. Upon review of the parties' briefs and evidence, the Court finds that oral argument is unnecessary and is denied. *See generally Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir.1999).

2. Unless otherwise noted, internal quotes and citations have been omitted in relation to quoted authority throughout this Order.

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b)Types of Class Actions. A class action maybe maintained if Rule 23(a) is satisfied and [3]

...

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

■■■ "Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of [Rule] 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corporation,* 657 F.3d 970, 979–980 (9th Cir.2011). A rigorous analysis of the Rule 23 factors is required to ensure that class certification is warranted. *See Id.* at 980. "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc. ... Frequently [the required] rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. [T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal–Mart Stores, Inc. v. Dukes,* — U.S. ——, 131 S.Ct. 2541, 2551–2552, 180 L.Ed.2d 374 (2011).

## DISCUSSION

### NUMEROSITY

A proposed class satisfies the numerosity requirement if "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). The record reflects that the class may exceed one million members;[4] Defendants do not dispute numerosity. The Court finds that numerosity is satisfied.[5]

### RULE 23(b)(3) AND CHOICE OF LAW ISSUES

Defendants argue that the law of up to fifty states is implicated in this case inasmuch as Plaintiffs assert a nationwide class action based on state causes of action for legal malpractice stemming from negligence and breach of fiduciary duties. Defendants further argue that Plaintiffs have failed to meet their burden to fully address the choice of law issues implicated in this case and failed to show that Rule 23(b)(3) has been satisfied.[6] *See* Milberg's Response at 19–26. The Court agrees.

---

**3.** The Court notes that Plaintiffs only maintain that the class can be certified pursuant to Rule 23(b)(3). Plaintiffs do not argue that the class can be certified pursuant to Rule 23(b)(1) or (b)(2), and the Court finds that those provisions are inapplicable in this case.

**4.** Plaintiffs allege that the class is in the hundreds of thousands, and they cite a portion of the record reflecting that the class may exceed one million members; for ease of reference, the Court will reference the class size as more than one million members throughout this Order.

**5.** As the Court finds that Plaintiffs have failed to satisfy the mandatory requirements of Rule 23(b)(3) for class certification, the Court declines to address the remaining Rule 23(a) factors.

**6.** In contrast, Plaintiffs argue that only Arizona law applies to all of the issues in this case. On this note, Plaintiffs argue that a common issue in

### Law of the Case and Estoppel

Plaintiffs initially argue that Defendants' choice of law arguments can not be considered by the Court. First, Plaintiffs assert that the Court has definitively ruled that Arizona law is the sole law that applies in this case, and therefore it is the law of the case. *See* Reply at 2–4. Second, Plaintiffs argue that estoppel applies to bar Defendants from raising the choice of law issues. The Court disagrees.

 Plaintiffs primary argument is that Defendants have argued throughout this case that Arizona law applies, that the Court dismissed with leave to amend based on this argument in relation to causation and punitive damages, and Plaintiffs were forced to file an amended complaint as a result. While Defendants did previously argue that Arizona law applied, that was primarily in the context of a motion to dismiss [7] where Plaintiffs' allegations in the complaint must be taken as true and all reasonable inferences are drawn in Plaintiffs' favor. Furthermore, Defendants' argument was a one-sentence, perfunctory statement that consisted of conclusions; there was no real analysis of any of Arizona's conflict of law factors, and the one legal malpractice case cited by Defendants in the same footnote (*Energex Enters.*) was a case where the parties did not dispute that

Arizona law applied such that the choice of law issue was really a non-issue in that case.[8] Rather, Defendants' argument was really akin to what many Defendants do in motions to dismiss; essentially, Defendants assumed that Arizona law applied for purposes of the motion to dismiss as they took the position that the entire case was subject to dismissal in any event under Arizona law. Likewise, as it was undisputed at the time in relation to the motions to dismiss, the Court applied Arizona law without any analysis of the choice of law issues as it was completely unnecessary at the time. While the Court did partially grant Defendants' initial motion to dismiss on the general issues of causation and punitive damages, Plaintiffs were granted leave to amend, Plaintiffs filed an amended complaint, and the Court denied Defendants' second motion to dismiss which has led us to the motion for class certification at bar. Unlike a motion to dismiss, Defendants and the Court are not bound by the liberal motion to dismiss standards which requires taking Plaintiffs' allegations as true and drawing all reasonable inferences in their favor. Rather, as to a motion for class certification: "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he

---

this case pertains to assessing damages based on the lost settlement value of the case. Plaintiffs argue that in securities class actions, the extreme vast majority of these cases settle, and this form of assessing damages is therefore particularly appropriate in this case; Plaintiffs also argue that VALIC and its counsel were seriously evaluating its settlement position prior to the dismissal of the case. In light of their position that Arizona law applies to the legal malpractice claims in this case, Plaintiffs argue that the Arizona Supreme Court would apply the of loss settlement chance method under the circumstances of this case. The Court disagrees. The Arizona authority cited by Plaintiffs was in the context of medical malpractice cases; the discussion in these cases is not relevant or persuasive inasmuch as applying the lost settlement chance method to a legal malpractice case. In addition, there are no Arizona cases that have applied the lost settlement chance in a legal malpractice case, and the settled law within Arizona is to use the case within a case procedure in legal malpractice cases. See *Cecala v. Newman*, 532 F.Supp.2d 1118, 1135 (D.Ariz.2007); *McClure Enters. v. Gen. Ins. Co. Of Am.*, 2009 WL 73677,

*3 (D.Ariz.2009); *Elliott v. Videan*, 164 Ariz. 113, 119–20, 791 P.2d 639 (App.1990). In any event, Arizona law is not the only law applicable. In addition, absent binding authority, the Court would not use the lost settlement chance method urged by Plaintiffs, but would only use the case within a case procedure in this case. *See* 4 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 33:3 (2012); *Beatty v. Wood*, 204 F.3d 713, 718–719 (7th Cir.2000).

7. *See* Doc. 42 (Milberg's Motion to Dismiss at 8, footnote 6: "Arizona law governs because the alleged negligence and fiduciary breaches occurred in the Underlying Litigation in this District, the relationship among counsel and the class was centered in Arizona, many of the Defendants reside in Arizona, and the Plaintiffs have alleged no facts suggesting that a different state's law should apply.").

8. *See Energex Enters. v. Shughart, Thomson & Kilroy*, 2006 WL 2401245, *2 (D.Ariz.2006) (noting twice that the "parties do not dispute that Arizona law should apply", and applying Arizona law in a legal malpractice case).

must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc. ... Frequently [the required] rigorous analysis [of the Rule 23(a) and (b) factors] will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. [T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal–Mart Stores, Inc.*, 131 S.Ct. at 2551–2552. In light of these considerations, the Court finds Plaintiffs' position unpersuasive; the law of the case and estoppel arguments are rejected.[9]

### Merits of the Choice of Law Issue and Rule 23(b)(3) [10]

■ As a threshold matter, the laws of up to fifty states are implicated in this case (as discussed below). In such circumstances, Plaintiffs have the burden to conduct an extensive choice of law analysis and show that the requirements of Rule 23(b)(3) are not defeated where the laws of up to fifty states are implicated in a nationwide class action; Plaintiffs have failed to meet this burden in both the initial motion for class certification and its reply briefs. *See Grayson v. 7-Eleven, Inc.*, 2011 WL 2414378, *4 (S.D.Cal. 2011); *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1189 (9th Cir.2001); *Lozano v. A & T Wireless Services, Inc.*, 504 F.3d 718, 728 (9th Cir.2007); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir.1996); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 618 (3rd Cir.1996), *aff'd*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). There are conflicts of law that could impact this case. *See Dougherty v. Lincare, Inc.*, 2011 WL 1361553 (D.Ariz.2011) (noting dif-

ferences between Arizona and Wisconsin negligence law that could impact the case); *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 194 (5th Cir. 2010) ("While the basic principles of fiduciary law may be the same throughout the country, the nuances vary, and those nuances affect the outcome of claims."; affirming the denial of class certification under Rule 23(b)(3)); 3 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 22:6 (2012) ("The attorney's negligence can result in the loss of only one of several legal theories, remedies, defenses, or culpable parties. Unlike comparative negligence, the defense that there is an alternative to that lost by the attorney does not concern the question of fault, but the fact or extent of the client's damages. An attorney's error may not affect the ability of the client to prosecute or defend the claim, or affect the result. If so, the attorney should not be liable for the error since the client did not suffer an injury. Thus, the client's failure to pursue a pending action can provide the attorney with a complete or partial defense for not mitigating the apparent loss. Thus, the defense may be a variation of the failure to mitigate damages or establish that the lawyer's error did not cause the loss."; discussing and citing case law reflecting how state laws vary on these issues).

■ As a review of the briefs reflect, there is no dispute that the Court applies Arizona's choice of law rules in this diversity action, and that Arizona would apply the principles of the Restatement (Second) of Conflict of Laws ("Restatement"). The parties' primarily focus on the specific factors in § 145(2) of the Restatement (dealing with choice of law issues relating to torts which encompasses the legal malpractice claims in this case) in

9. The Court also notes that none of the authority cited by Plaintiffs as to the law of the case and estoppel arguments were in the context of class actions, and certainly not in a nationwide class action such as this that implicates the laws of all fifty states. *See* Plaintiff's Reply to Milberg at 3–4. Those cases also did not implicate situations involving completely different standards (i.e., a motion to dismiss v. a motion for class certification) under circumstances such as the one at bar, or a scenario where the court was required to conduct a *rigorous analysis* to ensure that the requirements of Rule 23 were satisfied.

10. "Rule 23(b)(3) ... requires that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ... The predominance inquiry of Rule 23(b)(3) asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The focus is on the relationship between the common and individual issues." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir.2011).

arguing the choice of law issues under the particular circumstances in this case. *See* Milberg's Response at 19–25; Plaintiffs' Reply to Milberg at 2–8. As stated by the Arizona Supreme Court:

> Arizona courts apply the principles of the Restatement ... to determine the controlling law for multistate torts ... Restatement § 6(2) lists the general factors relevant to choosing the applicable rule of law and § 145 gives further guidance for the application of the § 6 factors to tort issues. Section 145 provides that courts are to resolve tort issues under the law of the state having the most significant relationship to both the occurrence and the parties with respect to any particular question. Section 145(2) lists some of the contacts which are to be considered in determining the choice of law applicable to a given issue. Those especially relevant contacts include:
>
> 1. The place where the injury occurred;
>
> 2. The place where the conduct causing the injury occurred;
>
> 3. The domicile, residence, nationality, place of incorporation and place of business of the parties;
>
> 4. The place where the relationship, if any, between the parties is centered. The inquiry is qualitative, not quantitative ... The court must evaluate the contacts according to their relative importance with respect to the particular issue. Restatement § 145(2).

*Bates v. Superior Court of the State of Ariz., In and For Maricopa County*, 156 Ariz. 46, 48–49, 749 P.2d 1367 (1988).[11]

Upon review of the record, briefs, and authority cited by the parties, the Court finds Milberg's position more persuasive. Plaintiffs have failed to show that Arizona law applies to this putative nationwide class action. Rather, Arizona's choice of law principles reflect that the law of up to 50 states (i.e., the places of injury and domicile of the absent class members) applies to the state based malpractice causes of action at issue, and Plaintiff has failed to show that Rule 23(b)(3) is satisfied.

As to the place where the injury occurred, the Court finds that the injury (i.e., an economic loss) occurred where the absent class members who suffered the economic loss were located. *See Johnson v. KB Home*, 720 F.Supp.2d 1109, 1122 (D.Ariz.2010) ("The first factor, place of injury, heavily favors Arizona law. Arizona home owners, allege that they were injured in Arizona by overpaying for their homes and paying for fraudulent appraisals."); *Casa Orlando Apartments, Ltd. v. Federal Nat. Mortg. Ass'n*, 624 F.3d 185, 191 (5th Cir.2010) (proposed class of mortgagors asserting breach of fiduciary duty claims against Fannie Mae were injured where they were located; "A breach of fiduciary duty still causes an injury ... [T]hose financial injuries occurred in the states where plaintiffs maintain their principal places of business."); *St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 233 F.Supp.2d 171, 172–175, 179 (D.Mass.2002) ("*St.Paul*") (the attorney's client (Vicam) was sued in Florida arising from actions taken based on bad legal advice; the client settled for two million dollars on the second day of trial in Florida; as to the legal malpractice action, the Court found that

---

**11.** Restatement § 145 states: "(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6 ... (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered ... These contacts are to be evaluated according to their relative

importance with respect to the particular issue." Restatement § 6 states: "(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law ... (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."

the client was injured where its business was located which was in Massachusetts; "[The client's] injury occurred in Massachusetts where, as the result of the malpractice, it would have to dispense funds.").[12]

The place of injury as to the absent class members implicates all fifty states: the class exceeds one million members; the members are widely dispersed geographically; VALIC managed retirement programs for more than 25,000 organizations representing more than 1.6 million investors throughout all fifty states; and estimated damages are hundreds of millions of dollars. As opposed to simply applying Arizona law to all the absent class members, this factor weighs in favor of applying the law of all of the states where the absent class members suffered their economic loss. For the same reasons referenced above, the domicile of the absent class members[13] also implicates the law of all fifty states. See *Baroldy v. Ortho Pharmaceutical Corp.*, 157 Ariz. 574, 578–579, 760 P.2d 574 (App.1988) ("In § 145 analyses, the domicile of the plaintiff often carries the greatest weight ... This is because the state where the injury occurs does not have a strong interest in compensation if the injured plaintiff is a nonresident ... Compensation of an injured plaintiff is primarily a concern of the state in which plaintiff is domiciled."; although North Carolina was the place where

the injury occurred and where the relationship between the parties was centered, and the place of the conduct causing the injury was unclear, the court found that Arizona had the most significant relationship where the injured plaintiffs' domicile was in Arizona); *Ambrose v. Illinois–California Express*, 151 Ariz. 527, 530–531, 729 P.2d 331 (App.1986) (same; although Arizona was the place of injury, the place where the conduct causing the injury occurred, the place where the relationship between the parties was centered, and the place where the litigation was brought, the Court found that Michigan had the most significant relationship in the case where the injured plaintiffs' domicile was in Michigan); *Dougherty v. Lincare, Inc.*, 2011 WL 1361553, *2–3 (D.Ariz.2011) (same; although Wisconsin was the place of the conduct causing the injury and the place where the relationship between the parties was centered, and the *injury either occurred in Arizona or New Mexico*, the court found that Arizona had the most significant relationship where the injured plaintiffs' domicile was in Arizona).[14] Again, as opposed to simply applying Arizona law to all the absent class members, this factor heavily weighs in favor of applying the law of all of the states where the absent class members are domiciled.[15]

As to the place where the relationship (if any) between the parties is centered, the

12. The Court notes that Plaintiffs argue that *St. Paul* found that the injury occurred in Massachusetts as that is where the legal advice relating to malpractice was received; this is incorrect. As quoted above, the *St. Paul* court found that the injury occurred in Massachusetts because that is where the client (Vicam) was located and therefore where the economic loss occurred. Rather, the court found that the conduct causing the injury occurred in Massachusetts as that is where the bad legal advice was received. *See id.* at 179. The malpractice in this case, however, is not related to the receipt of bad legal advice.

13. The Court notes that the domicile of the absent class members is likely the same state where the vast majority of the absent class members suffered their economic injury.

14. The domicile of the injured absent class members who exceed one million members greatly outweighs the location of the few Defendant attorneys and law firms that are based primarily out of New York, Washington, D.C., and Arizona.

15. To the extent a small percentage of the absent class members may have been injured in Arizona or are domiciled in Arizona, this certainly does not mean that Arizona law should be applied (i.e., Arizona has a more significant interest than the other 49 states) to the vast majority of the more than one million absent class members who were injured and domiciled in the other 49 states. Rather, the law of each of those states should govern inasmuch as those states have a significant interest in compensating the plaintiffs domiciled or injured in their state. To the extent Plaintiffs cite *Club Vista* and some of the general statements from the comments section of § 145 for the proposition that the domicile of the more than one million absent class members is not an important factor, the argument is unpersuasive under the circumstances of this case. *See* § 145, comment e; *Club Vista Financial Services, L.L.C. v. Maslon, Edelman, Borman & Brand, LLP*, 2011 WL 4947629 (D.Minn.2011) (giving equal weight to the domicile of the Plaintiff and Defendant who were from two different states, and therefore concluding that the factor was neutral).

Court finds that this factor is entitled to little weight under the circumstances of this case. Although Defendants may have had a relationship with the few named class members based in Arizona, as a practical matter, there was no relationship with any of the more than one million absent class members who were widely dispersed geographically. They had no practical relationship with these absent class members as no notice of the class action was ever sent to any of these class members; the class was decertified by the District Court prior to any order from the District Court directing notice upon the absent class members. The absent class members never received notice of the class action, never had any contact with Defendants, and never had any practical relationship with Defendants.

As to the place where the conduct causing the injury occurred, the Court finds that this factor is entitled to little weight under the circumstances of this case. *See Collins v. Miller & Miller, Ltd.*, 189 Ariz. 387, 943 P.2d 747 (App.1996). In *Collins*, plaintiffs voluntarily chose to hire an Arizona attorney and his respective law firm (which was also based in Arizona) to file lawsuits in Minnesota. *Id.* at 389–391, 943 P.2d 747. The underlying lawsuits were against a company based in Minnesota who signed notes reflecting debts owed to Plaintiffs in the form of stock options in the company. *Id.* The Arizona attorney (who also engaged a Minnesota law firm to assist him) filed the lawsuits to collect on the debt in Minnesota State Court, and the cases were later removed and consolidated in the federal District Court in Minnesota. *Id.* The case was litigated in Minnesota, and the District Court eventually granted the debtor's motions for summary judgment on the ground that the statute of limitations had expired prior to the filing of the Minnesota lawsuits. *Id.* The Arizona attorney appealed to the U.S. Court of Appeals for the Eighth Circuit, and the Eighth Circuit found that the statute of limitations had expired several

months before the Minnesota cases were filed and therefore the claims were barred. *Id.* Although plaintiffs had approached and hired the Arizona attorney months before the statute of limitations expired, counsel miscalculated the statute of limitations and failed to file the Minnesota lawsuits prior to its expiration. *Id.* As such, plaintiffs filed a lawsuit in Arizona against the Arizona attorney and his law firm alleging legal malpractice. *Id.* Although all of the litigation (i.e., filing documents, appearing at hearings, orders from the court, pro hac vice admission for foreign counsel) occurred in Minnesota, the Arizona Court of Appeals found that the place of the conduct causing the injury was primarily Arizona inasmuch as that was where the Arizona attorney and his firm was located and therefore performed the brunt of the legal work in the case. *Id.* at 389–91, 396, 943 P.2d 747 ("[T]he conduct alleged to have caused the injury occurred primarily in Arizona ...."). In addition, as Defendants and two of the Plaintiffs were domiciled and based in Arizona, and the relationship was centered in Arizona as Plaintiffs originated the relationship there and had communications with counsel in Arizona, the court found that Arizona had the most significant relationship in the matter. *Id.*

Although the actual litigation (i.e., numerous documents were sent to Arizona for the purpose of filing, foreign counsel were granted permission to appear pro hac vice, appearing at hearings, orders from the court) in this case occurred in Arizona, the conduct causing the injury primarily occurred (consistent with *Collins*) where counsel performed the brunt of their legal work which is in the states where they were based. *See id.* In this case, counsel were based in New York, Washington, D.C., and Arizona; the place of conduct causing injury primarily occurred in at least three separate states. The Court finds that this factor is entitled to little weight under the circumstances of this case.[16]

---

**16.** The Court notes that to the extent Plaintiffs cite *Club Vista* and some of the general statements from the comments section of § 145 of the Restatement for the proposition that the place of injury is not as important in this case as the place of conduct causing the injury, this argu-

ment is not helpful to Plaintiffs. *See Club Vista Financial Services, L.L.C. v. Maslon, Edelman, Borman & Brand, LLP*, 2011 WL 4947629 (D.Minn.2011); § 145, comment e. As discussed above, pursuant to *Collins*, the place of conduct causing the injury is entitled to little weight un-

While Plaintiffs argue that Arizona's law is the sole law that applies in this case, the Court finds Plaintiffs' position unpersuasive.

Plaintiffs cite *O'Boyle* [17] and Foulke [18] for the proposition that the injury in legal malpractice cases relating to loss of claims occurs in the state where the litigation takes place; Plaintiffs also cite *O'Boyle* for the proposition that the place of conduct causing the injury is the state where the litigation takes place, and legal malpractice occurring within a state's physical border gives that state the most significant interest in the case. While those cases did make those findings, they were in circumstances that were much different from the circumstances in this case, and are inconsistent with Arizona cases applying Arizona choice of law principles as reflected above.[19]

In *O'Boyle*, the Plaintiffs were a mother and son who shared ownership interests in various business entities; the son was from Florida and the mother was from New Jersey. *See* 2008 U.S. Dist. Lexis at *2–3. Plaintiffs chose to start a Tennessee business (New Midland) and conducted business in Tennessee through New Midland. *Id.* at *37–38. While operating their Tennessee business, they encountered problems with a Bank that they believed misappropriated more than $680,000 of New Midland's funds. *Id.* at *4–5. Thereafter, they hired an attorney for the purpose of filing a lawsuit in

Tennessee to recover the money misappropriated from New Midland; the attorney and his law firm were based in Pennsylvania, but he was also licensed in New Jersey. *Id.* at *4–5, *34. As requested by Plaintiffs, the attorney filed the lawsuit in Tennessee. Eventually, the Tennessee court dismissed the lawsuit and sanctions were imposed on Plaintiffs by the Tennessee court. *Id.* at 4–5. Plaintiffs claimed that the attorney's malpractice caused the lawsuit to be dismissed and sanctions to be imposed on them. *Id.* Under these circumstances, the court found that the place of injury and place of conduct causing the injury was Tennessee, and that Tennessee had the most significant relationship in the case. *Id.* at *2–5, *32–38; *see also id.* at 37–38 (emphasizing that "Tennessee's contacts with this case take on even greater significance ... [because the contacts] ... were intentionally initiated by Plaintiffs. They decided to form New Midland, a Tennessee partnership. They decided to conduct business in Tennessee under New Midland's name. And they decided to hire [the attorney] for the purpose of prosecuting the Tennessee Litigation in Tennessee.). Unlike the circumstances in *O'Boyle*, the more than one million absent class members who are widely dispersed geographically did not: form any business in Arizona; profit from a business in Arizona; seek to recover

---

der circumstances of this case. Furthermore, even though the legal malpractice in *Club Vista* pertained to a botched real estate transaction in Nevada, the court found that the place of conduct causing the injury was in Minnesota where the pertinent attorney and law firm were located as that is where the legal work was actually performed. *See id.* at *1–2, *10. The injury in *Club Vista* was given little weight largely because the "place where the injury occurred ... [was] ... not entirely clear. [The attorney] was retained by its North Dakota client [a non-party] to document the participation loan—a loan that involved Plaintiffs, non-party SFC and 29 individual banks [also non-parties] from multiple states. Although the loan was for the development of property in Nevada, the work performed by [the attorney] was for the financing and loan documentation of SFC." *Id.* at *1–2, *9. To the extent Plaintiffs cite *Washburn* for the proposition that an attorney appearing in litigation in a particular state gives that state the most significant relationship in the case, that case does not support that proposition and *Washburn* is inapplicable to this

case. *See Washburn v. Soper Law Firm*, 319 F.3d 338, 343 (8th Cir.2003) (finding that Illinois had the most significant relationship in the case involving malpractice by an attorney licensed in Iowa where "the plaintiffs are Illinois residents, the defendant attorney is licensed in both Iowa and Illinois, the defendant attorney was retained to represent the plaintiffs in Illinois state court proceedings, and these proceedings concerned Illinois residents, Illinois businesses, Illinois trust agreements, and Illinois contracts. In short, we agree with the Firm that Illinois has a more significant relationship to the parties and the occurrence.").

17. *See O'Boyle v. Braverman*, 2008 U.S. Dist. Lexis 62180 (D.N.J.2008).

18. *See Foulke v. Dugan*, 187 F.Supp.2d 253 (E.D.Pa.2002).

19. Plaintiffs' other authority and arguments were previously addressed in the text and footnotes above.

funds on behalf of their Arizona business that was defrauded; or have sanctions imposed on them by an Arizona court where they voluntarily chose to file their lawsuit on behalf of their Arizona business. The absent class members did not choose or hire the Defendant attorneys, and did not ask them to litigate a nationwide class action based on violations of federal securities laws in Arizona.

In *Foulke,* the Plaintiff was a delivery driver who, in the course of his employment, made a delivery to a business in Pennsylvania. *See Foulke,* 187 F.Supp.2d at 255–257. While on the company's premises, he was involved in an altercation with one of the company's employees, and he suffered physical injuries. *Id.* Although he was a resident of New Jersey, he sought out the services of three separate Pennsylvania attorneys from three separate Pennsylvania law firms for the purpose of filing a lawsuit in Pennsylvania to recover for the physical injuries he suffered in Pennsylvania. *Id.* The first Pennsylvania attorney he consulted informed Plaintiff that the case was without merit, and declined to prosecute the case. *Id.* The second Pennsylvania attorney he consulted agreed to take the case, timely filed a lawsuit in Pennsylvania to avoid any statute of limitations problems, investigated the case, and determined that the case was without merit. *Id.* The attorney advised the client by letter that the case was without merit as reflected by his investigation, and later sent a follow up letter informing the client that he would be closing the file in the case and to contact him with any questions. *Id.* The client never contacted the attorney with any questions, and approximately two months later the attorney filed a document with the Pennsylvania court dismissing the case. *Id.* Shortly thereafter, the client consulted with a third Pennsylvania attorney, and the attorney informed him that he could not prosecute the case as it had already been dismissed. *Id.* The meetings between Plaintiff and the three separate Pennsylvania attorneys all occurred in Pennsylvania. *Id.* at 257. Thereafter, the client and his wife sued the second attorney for malpractice. Under these circumstances, the court concluded that Pennsylvania had the most significant interest in the case, and noted that "the injury to plaintiffs, being barred from pursuing their claim in Pennsylvania state court, occurred in Pennsylvania." *Id.* Unlike the circumstances in *Foulke,* the more than one million absent class members who are widely dispersed geographically did not suffer their original injuries in the underlying litigation in the course of their employment in Arizona, and did not seek out, hire, and have their meetings with three separate Arizona attorneys from three separate Arizona law firms in Arizona for the purpose of filing a lawsuit in Arizona. The absent class members did not choose or hire the Defendant attorneys, and did not ask them to litigate a nationwide class action based on violations of federal securities laws in Arizona.

On balance, upon weighing the factors in § 145 and § 6 in light of the record and authority before the Court, the Court finds that the law of Arizona should not be applied to all of the more than one million class members who are widely dispersed geographically; there is no single jurisdictional law that can be applied to the class as a whole. Rather, the law of all fifty states is implicated and applicable inasmuch as different state laws will apply to different class members under the unique circumstances of this case as reflected herein.[20]

---

**20.** The Court notes that it did not include an extensive discussion of the policies and laws of all fifty states in discussing the choice of law factors and issues in this case; it was Plaintiffs' burden to do so, the Court has held Plaintiffs to their burden, and Plaintiffs did not meet their burden as they failed to discuss the policies or laws of any states other than Arizona. *See Spence v. Glock,* 227 F.3d 308, 312–313 (5th Cir.2000); *see also Lozano v. AT & T Wireless Services, Inc.,* 504 F.3d 718, 728 (9th Cir.2007); *Sacred Heart Health Systems, Inc. v. Humana Military Healthcare Services, Inc.,* 601 F.3d 1159, 1180 (11th Cir.2010). To the extent Plaintiffs believe they were lulled into not including such a discussion in their initial motion for class certification, this was unreasonable as discussed above. Furthermore, Milberg specifically raised the choice of law issues in their response, and Plaintiffs could have fully addressed the choice of law issues in their reply. In addition, if they believed that they needed additional time to address these issues in their reply briefs, they could have requested additional time which would have been granted; they failed to do this. Plain-

Where the laws of up to fifty states are implicated and there are unresolved conflicts of law as there are in this case, courts have found that Rule 23(b)(3) is not satisfied and have denied class certification; it is Plaintiffs burden to show that such conflicts of law do not preclude certification under Rule 23(b)(3), but Plaintiffs have failed to meet this burden in this case. *See, e.g., Haley v. Medtronic, Inc.,* 169 F.R.D. 643, 653–654 (C.D.Cal.1996) ("[N]o matter how similar—or comparable—each state's law on negligence may be, it is clear—despite plaintiffs' argument—that the negligence laws of the fifty states have some differences ... As a result, the Court would be forced to go through—and to have the jury go through—an individual analysis of each state's negligence law in order to determine defendant's liability for negligence with regard to each individual defendant ... [T]he complexities that class action treatment would create would more than outweigh any benefits from considering the common issues in one trial, making class action treatment less efficient and definitely not superior ... Furthermore, with this nationwide class, any measurements of compensatory and punitive damages would need to be measured individually, based on the individual circumstances and individual state laws ... Having the Court conduct this massive and particularized investigation and analysis is not in the best interests of judicial efficiency."); *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1018 ("Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable."); *Krueger v. Northwestern Mut. Life Ins. Co.,* 2011 WL 2938273, \*4 (N.D.Fla.2011) ("[P]laintiff has failed to show that applying the various state laws potentially at issue [i.e., 35 jurisdictions] in this case would be manageable. Indeed, Plaintiff has conducted no comparison of the laws of the various states ... The burden of showing uniformity or the existence of only a small number of applicable standards (that is, groupability) among the laws of the ... states rests squarely with the plaintiff ... To certify a multi-state class action, a plaintiff

must prove through extensive analysis that there are no material variations among the law of the states for which certification is sought."); *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1085 (6th Cir.1996) ("The law of negligence, including subsidiary concepts such as duty of care, foreseeability, and proximate cause, may ... differ among the states only in nuance, ... [b]ut nuance can be important, and its significance is suggested by a comparison of differing state pattern instructions on negligence and differing judicial formulations of the meaning of negligence and the subordinate concepts ... If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action ... Plaintiffs failed to meet their burden of demonstrating predominance of common issues."); *Sacred Heart Health Systems, Inc. v. Humana Military Healthcare Services, Inc.,* 601 F.3d 1159, 1180 (11th Cir. 2010) ("Notably, in cases implicating the law of all fifty states, [t]he party seeking certification ... must ... provide an extensive analysis of state law variations to reveal whether these pose insuperable obstacles ... Without deciding what level of analysis is appropriate in a case such as this one where the laws of fewer than all fifty states are at issue, it is clear that more than a perfunctory analysis is required. The issue can only be resolved by first specifically identifying the applicable state law variations and then determining whether such variations can be effectively managed through creation of a small number of subclasses grouping the states that have similar legal doctrines ... It is the court's duty to determine whether the plaintiffs have borne their burden where a class will involve multiple jurisdictions and variations in state law."); *Lozano v. AT & T Wireless Services, Inc.,* 504 F.3d 718, 728 (9th Cir.2007) ("[T]he law on predominance requires the district court to consider variations in state law when a class action involves multiple jurisdictions ... With respect to ... [the] claim ... that the district court should

tiffs failed to fully address the choice of law issues despite their opportunities to do so, and

the Court will not consider these issues again.

have determined whether the class action waiver in this case would be enforceable for each state, we note that [plaintiff] offers no explanation of how the district court was to conduct this analysis and how practical such analysis would be in this context. Thus, although he suggests that the district court should be required to engage in this analysis, he makes no attempt to do so himself ... [W]e reject the notion that the district court was obligated to conduct a comprehensive survey of every state's law on this issue."); *Spence v. Glock,* 227 F.3d 308, 312–313 (5th Cir.2000) ("[T]his case implicates the tort policies of all 51 jurisdictions of the United States, where proposed class members live and bought Glock pistols [class members sought damages for economic losses related to the diminished value of their pistols due to defective components; putative class members were estimated to be at least 50,000 and resided in all 50 states] ... [T]he most significant relationship test [of the Restatement] requires that the policies of each state with contacts be examined, yet the plaintiffs have not undertaken this analysis ... The burden of proof lies with the plaintiffs; in not presenting a sufficient choice of law analysis they have failed to meet their burden ... The district court is required to know which law will apply before it makes its predominance determination ... The district court here could not discharge its duty because plaintiffs did not supply adequate information on the policies of other interested states relevant to the choice of law. Nor did the plaintiffs provide the court with a sub-class plan in case the court disagreed that Georgia law controlled ... [P]laintiffs failed to meet their burden....").

As referenced above, Plaintiffs had the opportunity to fully address the choice of law issues at bar in both their initial motion for class certification, and certainly had the opportunity to do so in their reply briefs after Milberg explicitly argued that the law of up to 50 states was implicated, and the conflicts in these laws precluded certification under Rule 23(b)(3). Nonetheless, Plaintiffs failed to seize the opportunities to fully address the choice of law issues. Rather, Plaintiffs simply argued that Arizona law obviously applied, and failed to address the policies and laws of the other forty-nine states that are implicated in this case. Plaintiffs could have argued in the alternative that even if the laws of all fifty states were implicated, this case was still manageable as substantive differences and nuances in the laws of the fifty states (after an extensive analysis) did not defeat the Rule 23(b)(3) requirements; Plaintiffs could have advanced a sub-class plan or otherwise argued for an alternative, smaller, state-specific class. Despite the opportunity to do so, Plaintiffs failed to argue in the alternative as to these issues. Plaintiffs had opportunities to do this, Plaintiffs failed to do so, the deadline for motions for class certification has expired, and the Court will not reconsider these issues.[21] Plaintiffs have failed to meet their burden to show that Rule 23(b)(3) has been satisfied in this case, and Plaintiffs' motion for class certification is denied.

### CONCLUSION

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED as follows: (1) Plaintiffs' motion for class certification and appointment of class counsel (Doc. 186) is denied.

---

**21.** As noted above, if Plaintiffs believed they needed additional time to address these issues in their reply briefs, they could have requested additional time which would have been granted; Plaintiffs failed to do this.