NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MISSY ATKINS, et al., *Plaintiffs/Appellants*,

*v.*

SNELL & WILMER LLP, *Defendants/Appellees*.

No. 1 CA-CV 17-0519
FILED 10-16-2018

Appeal from the Superior Court in Maricopa County
Nos.  CV2011-052578; CV2011-052858; CV2014-052003 (Consolidated)
The Honorable Roger E. Brodman, Judge

**AFFIRMED**

APPEARANCES

Missy Atkins, Barry M. Atkins, West Palm Beach, Florida
*Plaintiffs/Appellants*

The Marhoffer Law Firm, PLLC, Scottsdale
By David Marhoffer
*Counsel for Plaintiff/Appellant Maverick*

Fennemore Craig, P.C., Phoenix
By Jessica Post, Amy Abdo, Timothy J. Berg
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Presiding Judge James P. Beene delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge Paul J. McMurdie joined.

---

**B E E N E**, Judge:

¶1        Barry and Missy Atkins (the "Atkinses") and Maverick 8610, LLC, ("Maverick") appeal the superior court's judgment awarding damages and sanctions in favor of Snell & Wilmer, LLP, Donald W. Bivens and Particia Lee Refo, Robert M. Kort and Myndi M. Kort (collectively "Snell").  For the following reasons, we affirm.

## FACTS[1] AND PROCEDURAL BACKGROUND

¶2        In April 2011, Missy Atkins ("Missy") filed a complaint against Snell, alleging professional negligence, breach of fiduciary duty, fraud, and requested punitive damages.  In May 2011, Barry M. Atkins ("Barry") filed a separate complaint against Snell, alleging the same causes of action for the same events.  Missy amended her complaint to add Maverick as a plaintiff in May 2011.  Snell sued the Atkinses and Maverick for breach of contract for unpaid legal fees and costs in April 2012.  In January 2014, Barry filed another complaint stemming from the same factual allegations, but added claims for constructive fraud, fraudulent concealment, breach of the covenant of good faith and fair dealing, while

---

[1]        Snell argues in its opening brief the Atkinses and Maverick failed to: 1) include citations to the record or legal authorities; 2) provide any legal argument regarding certain issues; 3) identify issues for which they raised legal arguments; and 4) argue certain issues beyond incorporating an argument by reference to their filings in the superior court.  The lack of reference to legal authority and the record could be considered abandonment and waiver of a claim. *See* ARCAP 13(a)(7)(A); *State v. Carver*, 160 Ariz. 167, 175 (1989).  Issues the Atkinses or Maverick failed to address according to these authorities are waived.  In our discretion, we may, however, decide a waived issue on its merits based on our own review of the record. *See Adams v. Valley Nat'l Bank of Ariz.*, 139 Ariz. 340, 342 (App. 1984) (recognizing that courts prefer to decide each case upon its merits rather than dismissing on procedural grounds).

restating the other causes of action. The cases were consolidated in March 2015.[2]

¶3 In their complaints, the Atkinses alleged Snell negligently represented them and Maverick during a lawsuit filed in May 2007 by Randall K. Zeller, who asserted claims for breach of contract, fraud/conversion, and fraudulent transfer (the "*Zeller* litigation"). Barry settled the *Zeller* litigation upon Snell's analysis and advice in May 2009. Barry attended the settlement conference on behalf of himself, Missy, and Maverick, but Missy signed the settlement agreement in her own right; both Atkinses signed for Maverick as its members.

¶4 In the *Zeller* litigation, Zeller was collecting on loans he extended to the Atkinses and Maverick. Through his first loan, Zeller lent Barry $220,000 to continue litigating Barry's unrelated lawsuit against various corporate and individual defendants in Florida (the "*Topp* litigation"), a loan for which Barry executed three documents—a promissory note, a security agreement, and a "Participation Agreement." The promissory note required Barry to repay the $220,000 to Zeller with interest at a fixed rate of 10% per annum and 18% upon default, which the Atkinses repaid with 10% interest. Through the Participation Agreement, however, Barry also agreed to pay Zeller 10% of any net recovery received in the *Topp* litigation, a share the Atkinses subsequently refused to pay Zeller. While awaiting resolution of the *Topp* litigation, Zeller extended three additional loans for the Atkinses' living expenses—for $50,000 (in April 2005), $30,000 (in August 2005), and $10,000 (in January 2006). Lastly, Zeller lent the Atkinses $100,000 to deposit on their $2.7 million house in Carefree, Arizona, which Maverick bought in July 2006.

¶5 On June 14, 2006, both Barry and Missy executed a $15 million settlement agreement in the *Topp* litigation. The Atkinses netted $6,569,114, which they immediately deposited in an M&I Bank account held solely by

---

[2] Throughout the litigation, we have resolved two appeals the Atkinses and Maverick filed: 1) we ruled, *inter alia*, the superior court erred by dismissing the legal malpractice claim on a motion to dismiss, *see Atkins v. Snell & Wilmer, L.L.P.* ("*Atkins I*"), 1 CA-CV 12-0018, 2012 WL 6720355, at *6, ¶ 27 (Ariz. App. Dec. 27, 2012) (mem. decision); and 2) we ruled the superior court's denial of a Rule 60(c)(4) motion and its award of sanctions were proper. *See Atkins v. Snell & Wilmer LLP* ("*Atkins II*"), 1 CA-CV 16-0733, 2018 WL 710243, at *3, ¶¶ 13, 16 (Ariz. App. Feb. 6, 2018) (mem. decision).

Missy. Missy then distributed the funds to accounts held by Maverick and Adventure Ventures, two entities owned and operated exclusively by the Atkinses and formed when the Atkinses received the *Topp* settlement. Maverick, formed in July 2006, for the purpose of purchasing the $2.7 million house in Carefree, Arizona, was funded solely from the *Topp* litigation settlement. Moreover, the Atkinses used accounts established for Maverick and Adventure Ventures to pay for personal expenses because Barry did not have a personal bank account between 1998 and 2010.

¶6　　　　At the core of the Atkinses' professional malpractice lawsuit against Snell is their postnuptial agreement ("PNA") executed in February 1998 in connection with their pending divorce proceedings. In March 1998, a Florida court entered an order titled "Agreed Order Validating Post-Nuptial Agreement" ("Agreed Order"), domesticated in Arizona in May 2015. The Atkinses never divorced and the matter was dismissed without prejudice in June 1999. The PNA states in section 11 that "attached to this Post Nuptial Agreement is an Agreed Order to be entered . . . at the time of their dissolution of marriage . . . ." In August 2015, our superior court found section 11 ambiguous in relation to the parties' intent to effectuate the PNA without first obtaining a decree of dissolution, a genuine issue of material fact to be resolved by the jury.

¶7　　　　In December 2015, the superior court granted Snell's motion for summary judgment on the Atkinses' and Maverick's claim for punitive damages. In June 2016, the superior court granted Snell's multiple motions for summary judgment on the Atkinses' and Maverick's claims for breach of fiduciary duty, fraud, constructive fraud, and breach of the implied covenant of good faith and fair dealing.

¶8　　　　Between October 4 and 26, 2016, the Atkinses' and Maverick's remaining claim of legal malpractice and Snell's claim for breach of contract were tried to a jury. On October 20, 2016, Snell moved for a directed verdict on Maverick's claim, which was granted. On October 25, 2016, before the case was submitted to the jury, the Atkinses made 12 oral motions for directed verdict, all of which the superior court denied. The jury unanimously found in favor of Snell on all counts.

¶9　　　　On April 25, 2017, the superior court entered a judgment in favor of Snell and assessed $581,483.70 in Arizona Rule of Civil Procedure ("Rule") 68(g) sanctions against the Atkinses and Maverick. On May 26, 2017, the Atkinses filed an amended Rule 59 motion for a new trial, joined by Maverick, which the court denied. The Atkinses and Maverick timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the

Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶10  The Atkinses argue the superior court erred by: 1) denying their motions for directed verdicts; 2) denying their Rule 59 motion for a new trial; 3) giving three jury instructions, which incorrectly stated the law and caused them prejudice; 4) improperly granting motions for summary judgment on their remaining claims; and 5) awarding sanctions against them. Maverick additionally argues the superior court erred by granting a directed verdict to Snell on Maverick's professional malpractice claim because it sufficiently alleged damages independent of Barry and Missy.

¶11  In our review, we defer to a superior court's factual findings supported by substantial evidence, "but we review any issues of law de novo." *Sw. Soil Remediation, Inc. v. City of Tucson*, 201 Ariz. 438, 442, ¶ 12 (App. 2001). "[W]e view the evidence, and all reasonable inferences arising therefrom, in the light most favorable to sustaining the judgment." *Alliance Marana v. Groseclose*, 191 Ariz. 287, 288 (App. 1997).

## I.   The Atkinses' Appeal

### A.   This court lacks jurisdiction to review issues raised in the Atkinses' motions for a directed verdict but not raised in their Rule 59 motion for a new trial.

¶12  The Atkinses argue the superior court erred by denying the 12 motions for directed verdicts because the PNA was valid, enforceable, and improperly collaterally attacked by Snell.

¶13  A Rule 50(a) motion allows a party to request that a perceived insufficiency of proof be cured by the reopening of a party's case before the case is submitted to the jury, *Marquette Venture Partners II, L.P. v. Leonesio*, 227 Ariz. 179, 182, ¶ 10 (App. 2011), when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue," Rule 50(a)(1); *Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 225 Ariz. 194, 199-200, ¶ 12 (App. 2010), *aff'd*, 226 Ariz. 419, ¶ 2 (2011). The Rule 50(a) motion is a time saving device. *Leonesio*, 227 Ariz. at 182, ¶ 10. Once the jury delivers a verdict, however, the Rule 50(a) motion must be renewed by a Rule 50(b) motion because "a Rule 50(a) motion is insufficient to satisfy the jurisdictional requirement of § 12-2102(C)," which a Rule 50(b) motion satisfies. *Leonesio*, 227 Ariz. at 182-83, ¶¶ 9, 13; *see also* A.R.S. § 12-2102(C)

(after a jury trial, a motion for a new trial must be made before the supreme court shall "consider the sufficiency of the evidence to sustain the verdict or judgment").

**¶14**        After Snell presented its case to the jury, the Atkinses' attorney raised 12 oral motions for a directed verdict pursuant to Rule 50(a), which were all denied.   On October 26, 2016, the jury rendered its verdicts. On April 25, 2017, the superior court entered judgment for Snell.   The Atkinses filed a timely Rule 59 motion for a new trial, but they failed to request that the court "direct the entry of judgment as a matter of law" pursuant to Rule 50(b) as part of the Rule 59 motion, or in a separate filing, on all or some of the issues submitted for the directed verdicts.  *See* Rule 50(b).

**¶15**        Because the Atkinses failed to renew their Rule 50(a) motions in a Rule 50(b) motion and our post-verdict review would involve assessment of the sufficiency of the evidence, we lack jurisdiction to review issues not raised in their Rule 59 motion.  *See Gibson v. Boyle*, 139 Ariz. 512, 518 (App. 1983) ("A directed verdict may only be granted where there is *no evidence* introduced which would justify a reasonable person in returning a verdict for the opposing party.") (emphasis added) (citation omitted).

### B.        The superior court did not abuse its discretion when it denied the Atkinses' Rule 59 motion for a new trial.

**¶16**        The Atkinses argue the superior court erroneously denied their Rule 59 motion because 1) the court failed to abide by the Full Faith and Credit Clause of the United States Constitution, U.S. Const. art. IV, § 1, regarding their PNA and allowed irrelevant and prejudicial evidence regarding the PNA to be introduced at trial; and 2) three jury instructions—usury, postnuptial, and defamation—were "contrary to the rule of law."

#### 1.        Substantial evidence supported the jury finding that the Atkinses failed to inform Snell about the PNA.

**¶17**        The superior court may grant a new trial when "the verdict, decision, findings of fact, or judgment is not supported by the evidence or is contrary to law."   Rule 59(a)(1)(H).   We review the denial of a Rule 59 motion based on the verdict being against the weight of evidence for an abuse of discretion.  *Dawson v. Withycombe*, 216 Ariz. 84, 95, ¶ 25 (App. 2007).   We view the evidence in the light most favorable to sustaining the jury verdict and will affirm if substantial evidence supports it.  *Warrington v. Tempe Elementary Sch. Dist. No. 3*, 197 Ariz. 68, 69, ¶ 4 (App. 1999).   "The credibility of a witness' testimony and the weight it should be given are

issues particularly within the province of the jury." *In re Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, 287, ¶ 12 (2000) (citation omitted).

**¶18** At trial, the jury expressly found that the Atkinses had not informed Snell about the PNA before the May 2009 *Zeller* litigation settlement conference. In reaching its conclusion, the jury made credibility determinations: it evaluated the direct testimony of both Barry and Missy Atkins against the direct testimony of Snell's attorneys Robert M. Kort and Donald W. Bivens.

**¶19** At trial, Barry testified that he informed Snell about the PNA and about his understanding that the PNA protected Missy from being sued for his debts. Missy testified she told Kort about the PNA and assumed he had a copy. To the contrary, Kort testified the Atkinses never told him about the PNA and did not provide a copy to Snell, although all relevant documents were requested in the Snell engagement letter formalizing Snell's representation of the Atkinses and Maverick in the *Zeller* litigation. Bivens testified that the Atkinses never told him about the PNA and that he understood, from their actions, that the Atkinses lived in a community property arrangement. *See In re Estate of Reinen*, 198 Ariz. at 287, ¶ 12.

**¶20** The jury received other evidence that contradicted the Atkinses' testimony. In 2006, the Atkinses hired Hymson law firm to prepare estate planning documents for them. The Atkinses did not inform Hymson about the PNA at any time during the drafting process, although Hymson's intake form specifically asked them to bring any pre- or post-nuptial agreements. The resulting document, the Atkins Family Trust executed in 2006, identified no separate property and identified as community property both Maverick and Adventure Ventures, the entities holding the $6.5 million *Topp* settlement. The Atkinses, acting as the sole members of Maverick and Adventure Ventures, assigned their 100% interests in these entities to the Trust.

**¶21** Additionally, the jury received evidence the Atkinses had not provided a copy of the PNA to other former attorneys: 1) Don Hayden, who represented Barry in the *Topp* litigation; 2) Ken Johnson, who also represented Barry in the *Topp* litigation; 3) Blaine Hibberd, who represented the Atkinses in negotiating the reduction of a judgment for monies owed to American Express; and 4) Gordon Dudley, who represented the Atkinses in a lawsuit prior to the *Zeller* litigation.

¶22 Further, the Atkinses' expert on an attorney's standard of care, Robert Garrett, did not testify that the Arizona attorney standard of care includes a duty to search for undisclosed documents by a client, such as the PNA or the Florida judgment, or that constructive notice creates a duty to investigate clients' public filings in other states. Through counsel, Missy conceded that she was not alleging a breach of the standard of care arising out of a duty to investigate.

¶23 Because the jury determined credibility and substantial evidence supported the jury finding that the Atkinses failed to inform Snell about the PNA, we affirm the superior court's denial of the motion for new trial on this issue. *See Warrington*, 197 Ariz. at 69, ¶ 4.

¶24 Moreover, in their Rule 59 motion and appellate briefs, the Atkinses raised multiple arguments pertaining to the enforceability of the PNA. Because the jury determined that the Atkinses failed to disclose the PNA to Snell during the firm's representation of the Atkinses in the *Zeller* litigation, their enforceability arguments are irrelevant. Therefore, we do not review the superior court's rulings regarding the admissibility or validity of the PNA made before and during trial because any such error would be harmless. *Gibson*, 139 Ariz. at 518.

## 2. None of the jury instructions given misled the jury.

¶25 In their Rule 59 motion, the Atkinses further challenged three of the jury instructions given: 1) the usury instruction, 2) the "Postnuptial Agreement" and "Separate Property" instruction, and 3) the defamation instruction—contending all three were "directly contrary to the rule of law and were harmful to [them,] requiring a new trial."

¶26 Although we review a superior court's denial of a motion for new trial based on giving a jury instruction for an abuse of discretion, "we review *de novo* whether jury instructions accurately state the law." *Stafford v. Burns*, 241 Ariz. 474, 478, ¶ 10 (App. 2017) (citation omitted). "A jury instruction need not be a model instruction, as long as it does not mislead the jury when the instructions are read together and in light of each other." *Life Inv'rs Ins. Co. of Am. v. Horizon Res. Bethany, Ltd.*, 182 Ariz. 529, 532 (App. 1995). A jury instruction will warrant reversal only if it was "both harmful to the complaining party and directly contrary to the rule of law." *Powers v. Taser Int'l, Inc.*, 217 Ariz. 398, 400, ¶ 12 (App. 2007), *as corrected* (Jan. 4, 2008).

### a. The usury instruction accurately stated Florida law on corrupt intent.

¶27        The Atkinses argue the usury instruction should not have included five of the seven stated factors in determining corrupt intent to receive more than the legally permissible interest, contrary to applicable Florida law.  We disagree.

¶28        The "corrupt intent" part of the superior court's "usury instruction" defined corrupt intent as "requir[ing] a corrupt purpose in the lender's mind to get more than [the] legal rate of interest for the money lent."  The instruction further listed seven factors, which it directed "the jury *may* consider in determining corrupt intent" (emphasis added), stressing that "[t]he determination of corrupt intent is to be made based upon the circumstances surrounding the entire transaction."  *See Kraft v. Mason*, 668 So. 2d 679, 684 (Fla. Dist. Ct. App. 1996) (quoting *Jersey Palm-Gross, Inc. v. Paper*, 658 So. 2d 531, 534 (Fla. 1995)).  In Florida, the factors that can be considered in determining corrupt intent include: the lender's knowledge, the total amount the lender would receive, the sophistication of the parties, who dictated the terms of the note, whether there was duress, whether repayment was contingent on an uncertain event, and the bargaining position of the parties.  *See Kraft*, 668 So. 2d at 684; *Valliappan v. Cruz*, 917 So. 2d 257, 260 (Fla. Dist. Ct. App. 2005) (considering sophistication of the parties, repayment's dependency upon a contingency, who wrote the terms of the loan); *Jersey Palm-Gross, Inc. v. Paper*, 639 So. 2d 664, 668 (Fla. Dist. Ct. App. 1994) (considering sophistication of the parties, the lender's knowledge of the amount of interest to be received and intent to receive the amount charged, borrower's financial distress and urgent need for the loan, who dictates terms of the loan, ignorance of the usury laws); *Ross v. Whitman*, 181 So. 2d 701, 703 (Fla. Dist. Ct. App. 1966) (stating ignorance of the usury laws or reliance upon legal advice does not preclude a finding of corrupt intent).

¶29        The Atkinses argue the superior court failed to include their proposed instruction on contingencies.  This is incorrect.  One of the seven factors of corrupt intent to be considered by the jury included an instruction on contingencies and incorporated the substantial risk measure as proposed by the Atkinses, which is an accurate expression of Florida law.  *See Kraft*, 668 So. 2d at 684 (Fla. Dist. Ct. App. 1996) ("A loan agreement is not usurious when payment depends upon a contingency."); *Diversified Enters., Inc. v. West*, 141 So. 2d 27, 30 (Fla. Dist. Ct. App. 1962) ("When the principal sum lent or any part of it is placed in hazard, the lender may lawfully require, in return for the risk, as large a sum as may be reasonable,

provided it is done in good faith. The risk, however, must be substantial, for a mere colorable hazard will not preclude excessive interest charges from being usurious.").

**¶30** Accordingly, the superior court's corrupt intent instruction did not prejudice the Atkinses as it appropriately stated Florida law, *see Powers*, 217 Ariz. at 400, ¶ 12, and, read in conjunction with the additional permissive and the totality of the circumstances language, the instruction gave the jury considerable discretion in finding all or some of the factors listed, *see Life Inv'rs Ins. Co. of Am.*, 182 Ariz. at 532; *Stafford*, 241 Ariz. at 478, ¶ 10.

**¶31** The Atkinses further argued the jury was improperly instructed on determining statutorily defined remedies for a Florida usury loan. Any potential error would have been harmless because the jury found that Zeller did not have a corrupt intent and the instruction conditioned review of remedies upon finding corrupt intent by clear and convincing evidence. *See Gibson*, 139 Ariz. at 518. Additionally, the Atkinses argue the jury should have been instructed on novation because Snell argued Zeller changed the terms of the loan when he forewent enforcement of the promissory note in December 2005. Because the Atkinses do not support their argument by citations to the record, they waived it for our review. *See* ARCAP 13(a)(7)(A); *State v. Carver*, 160 Ariz. 167, 175 (1989). Still, the superior court's decision to exclude a novation instruction was within its discretion because Snell argued, contrary to the Atkinses' position, Zeller understood the loan would be repaid only if Barry won at the *Topp* litigation. *See Pima County v. Gonzalez*, 193 Ariz. 18, 20, ¶ 7 (App. 1998) (stating the superior court cannot instruct the jury on a theory that is not supported by the facts).

> **b.** **Any potential error by instructing the jury on the PNA and property characterization was harmless.**

**¶32** The Atkinses argue the jury should not have been instructed on the characterization of property as separate or community because it is a question of law for the court. The Atkinses further argue the court failed to instruct the jury about the status of their postnuptial agreement as a final judgment that cannot be abandoned, and it erred by failing to give an instruction defining constructive notice.

**¶33** As explained in ¶¶ 17-24, *supra*, substantial evidence supported the jury's finding that the Atkinses did not inform Snell about

the PNA. Any error in instructing the jury on characterization of the marital property in relation to the PNA, its validity, or abandonment, would have been harmless, causing no prejudice to the Atkinses. *See Gibson*, 139 Ariz. at 518.

**¶34** Because the Atkinses' expert testimony on the attorneys' standard of care did not include a duty to search for an undisclosed document or a duty to investigate their clients' public filings in other states, the court did not abuse its discretion by declining to instruct the jury on constructive notice. *See Stafford*, 241 Ariz. at 478, ¶ 10; *Gonzalez*, 193 Ariz. at 20, ¶ 7 (stating we must reverse the jury verdict "when the court instructs the jury on a theory that is not supported by the facts").

> **c.** **The Atkinses failed to preserve appellate review of the defamation instruction.**

**¶35** The Atkinses contend the court erred by instructing the jury that Arizona, rather than Florida, law on defamation applied in this case.

**¶36** To preserve an objection to jury instructions on appeal, a party must specifically object to the superior court's ruling "before the jury retires to consider its verdict" by stating distinctly "what is being objected to and the grounds for the objection." *S. Dev. Co. v. Pima Capital Mgmt. Co.*, 201 Ariz. 10, 19, ¶ 20 (App. 2001) (quotations omitted); *see also* Rule 51(b)(3)(C), (c). Subsequently, a party must move for a new trial on the issue to preserve it for appellate review because a review of the superior court's refusal to instruct the jury on a theory of the case requires a sufficiency of the evidence determination. *See* A.R.S. § 12-2102(C); Rule 59(a)(1)(F) (stating grounds for a new trial include an error in giving or refusing jury instructions); *Lewis v. S. Pac. Co.*, 105 Ariz. 582, 583 (1970).

**¶37** The Atkinses argue the court's conclusion that Arizona law on defamation applies was a purely legal issue. *See State Farm Fire & Cas. Ins. Co. v. Grabowski*, 214 Ariz. 188, 192, ¶ 12 (App. 2007) (party challenging legality of jury instruction, rather than whether evidence supported the instruction, need not move for new trial to preserve issue for appellate review). In Arizona, the "courts apply the principles of the Restatement (Second) of Conflict of Laws (1971) to determine the controlling law for multistate torts." *Bates v. Superior Court*, 156 Ariz. 46, 48 (1988) (footnote omitted). "In an action for defamation, the local law of the state *where the publication occurs* determines the rights and liabilities of the parties . . . unless . . . some other state has a *more significant relationship* under the principles stated in § 6 to the occurrence and the parties, in which event the

11

local law of the other state will be applied." Restatement (Second) of Conflict of Laws ("Restatement") § 149 (1971) (emphasis added). To determine which law controls, the court must apply the Restatement's choice of law principles to the facts of the case. *Bates*, 156 Ariz. at 49.

**¶38** Because the superior court had to have engaged in a qualitative evidentiary inquiry into the parties' relevant contacts, as guided by section 145 of the Restatement, its conclusion that Arizona law governs is not a purely legal conclusion. *See Grabowski*, 214 Ariz. at 192, ¶ 12; *see also Bates*, 156 Ariz. at 48-49 (listing relevant factors to consider in determining contacts). Therefore, the Atkinses had to have filed a motion for a new trial to preserve the issue for our review. *See* A.R.S. § 12-2102(C); *Lewis*, 105 Ariz. at 583. Although the Atkinses' attorneys objected to the defamation instruction before the jury deliberated, the Atkinses failed to include this issue in their Rule 59 motion for a new trial. We conclude, thus, that the Atkinses waived this issue for our review. *See Lewis*, 105 Ariz. at 583.

**¶39** In summary, none of the challenged jury instructions misled the jury on the applicable law. *See Keg Restaurants Ariz., Inc. v. Jones*, 240 Ariz. 64, 78, ¶ 50 (App. 2016); *see also Gonzalez*, 193 Ariz. at 20, ¶ 7 (stating an instruction is correct when, "considering the instructions as a whole, the jury was properly guided in arriving at a correct decision"). The superior court did not abuse its discretion in denying the Atkinses' Rule 59 motion. *See Stafford*, 241 Ariz. at 478, ¶ 10.

### C.    Motions for summary judgment were properly granted.

**¶40** The Atkinses contend many of their claims were improperly dismissed by summary judgment because evidence supported the claims. The dismissed claims included: 1) breach of fiduciary duty, 2) constructive fraud, 3) fraudulent concealment, 4) breach of the good faith and fair dealing covenant implied in their contract with Snell, and 5) punitive damages.

**¶41** Entry of summary judgment is proper "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Rule 56(a). We determine *de novo* whether any genuine issue of material fact exists and whether the superior court erred in applying the law; we will uphold the court's ruling if correct for any reason. *Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996). We construe the evidence and reasonable inferences in the light most favorable to the non-moving party. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz.

474, 482, ¶ 13 (2002). "[O]ur review of the superior court's decision is limited to the record before the court when it considered the motion for summary judgment." *Desert Mountain*, 225 Ariz. at 215, ¶ 94.

### 1.    The breach of fiduciary duty claim

**¶42**        The Atkinses assert Snell breached its fiduciary duty to them and disputed material facts remain regarding Snell: 1) giving incomplete, false, and misleading legal advice; 2) subordinating their interests to Snell's and Zeller's interests; 3) failing to disclose to them that Snell determined that Zeller should receive the benefit of his bargain; and 4) exposing Missy to liability in the *Zeller* litigation, although "she was not a party to any Zeller agreement."

**¶43**        An attorney's bad advice, without more, is not a breach of fiduciary duty. *See Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 26 (App. 1996); *see also, e.g., Crist v. Loyacono*, 65 So. 3d 837, 842, ¶ 15 (Miss. 2011) ("The law recognizes a clear distinction between allegations of legal malpractice based on negligence (sometimes called a breach of the standard of care) and those based on breach of fiduciary duty (sometimes called a breach of the standard of conduct)."); *Smith v. Mehaffy*, 30 P.3d 727, 733 (Co. App. 2000) (same). "[T]he essential elements of legal malpractice based on breach of fiduciary duty include the following: (1) an attorney-client relationship; (2) breach of the attorney's fiduciary duty to the client; (3) causation, both actual and proximate; and (4) damages suffered by the client." *Cecala v. Newman,* 532 F.Supp. 2d 1118, 1135 (D. Ariz. 2007) (citations omitted).

**¶44**        To breach a fiduciary duty, an attorney must put his or her own interests or the interests of another before the interests of a client. *See Weil, Gotshal & Manges, LLP, v. Fashion Boutique of Short Hills, Inc.*, 780 N.Y.S.2d 593, 595-96 (A.D. 2004); *see also Trousdale v. Henry*, 261 S.W.3d 221, 227 (Tex. App. 2008) (stating a breach of fiduciary duty claim "requires allegations of self-dealing, deception, or misrepresentations that *go beyond the mere negligence* allegations in a malpractice action") (emphasis added).

**¶45**        The Atkinses fail to cite to evidence in the record regarding the relationship between Snell and Zeller that would cause Snell to seek to benefit Zeller. Accordingly, this claim is waived. *See* ARCAP 13(a)(7)(A) (requiring appellant's brief to contain arguments with "citations of legal authorities and appropriate references to the portions of the record on which the appellant relies"); *Carver*, 160 Ariz. at 175 ("Failure to argue a claim usually constitutes abandonment and waiver of that claim."); *Schabel*

*v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167 (App. 1996) ("Issues not clearly raised and argued in a party's appellate brief are waived."). Further, the Atkinses' allegation that Snell put its own interests of generating fees before the Atkinses' interests is contrary to Snell encouraging the Atkinses to settle the *Zeller* litigation, and ultimately reaching a settlement in the Atkinses' favor. Snell brought about other favorable outcomes in the *Zeller* litigation: Snell successfully defended against Zeller's motion for summary judgment and won a dismissal of two counts in the *Zeller* litigation. Moreover, arguing that "disputed facts remain regarding whether the legal advice [Snell] gave [the Atkinses and Maverick] was proper" is not a proper basis for a fiduciary duty claim, but rather for a legal malpractice claim. *See Standard Chartered PLC*, 190 Ariz. at 26.

¶46     Similarly, the Atkinses do not explain how Snell breached its fiduciary duty to Missy on her separate claim, which is based on the PNA. If the PNA was not valid, both Barry and Missy share the same interest as co-owners of the community property. If the PNA was valid, any loss incurred by Missy was to be indemnified by Barry under the PNA. Further, the Atkinses failed to argue, or demonstrate with evidence in the record, any reason for Snell to favor Barry over Missy. The jury also found that Snell did not provide negligent legal services to Missy based on any conflict of interest, separate property and/or the PNA.

¶47     Although the Atkinses incorporate by reference "numerous additional allegations of breaches of fiduciary duty," they provide no legal arguments regarding those allegations, waiving them on appeal. *See* ARCAP 13(a)(7)(A); *Carver*, 160 Ariz. at 175; *Schabel*, 186 Ariz. at 167.

### 2.     The constructive fraud, fraudulent concealment, and good faith and fair dealing covenant claims

¶48     The Atkinses argue Snell misrepresented to Barry various legal theories and made incorrect interpretations of Arizona and Florida laws related to the *Zeller* litigation. They maintain that sufficient evidence exists which supports their claim that these misrepresentations constitute a basis for constructive fraud, fraudulent concealment, and good faith/fair dealing claims.

¶49     "The essence or gravamen of the cause of action controls this determination, not the form in which the cause is pleaded." *Dunlap v. City of Phoenix*, 169 Ariz. 63, 68 (App. 1990); *see also Kimleco Petroleum, Inc. v.*

*Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex. App. 2002) (A case arising out of an attorney's alleged bad legal advice or improper representation should not "be split out into separate claims for negligence, breach of contract, or fraud . . . .").

**¶50**      Because Snell did not breach its fiduciary duty to the Atkinses, *see* ¶¶ 42-47, *supra*, the Atkinses' constructive fraud claim also fails. *See Lasley v. Helms*, 179 Ariz. 589, 591-92 (App. 1994) (stating a constructive fraud claim can arise only from breach of duties stemming from a fiduciary or confidential relationship). Because the Atkinses complain about inadequate legal advice, their claim does not sound in fraud.

**¶51**      The Atkinses also point to no evidence regarding Snell's concealment showing "that they had not researched Florida law before rendering advice" and that "Zeller's law suit was likely dismissible in Arizona." *See Local No. 395*, 201 Ariz. at 496 n.22 ("Liability for fraudulent concealment . . . lies against a party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information.") (citation and quotations omitted). To the contrary, the record demonstrates that Snell openly discussed the now questioned legal advice with the Atkinses.

**¶52**      Additionally, the Atkinses do not argue, or cite to any evidence, that Snell made a specific contractual promise beyond a general representation in the *Zeller* litigation or what such a promise might have been. *See Collins v. Miller & Miller, Ltd.*, 189 Ariz. 387, 395 (App. 1996) (An action for breach of a general contract to provide legal services can sound in contract "[o]nly if there is a specific promise contained in the contract . . . and then only to the extent the claim is premised on the nonperformance of that promise;" otherwise, "a professional malpractice action does not 'arise' from contract, but rather from tort.") (quoting *Barmat v. John & Jane Doe Partners A-D*, 155 Ariz. 519, 524 (1987)).

**¶53**      Although Missy stated a separate claim for fraud, the Atkinses do not specifically argue this issue in their legal briefs on appeal. Therefore, this issue is waived on appeal. *See* ARCAP 13(a)(7)(A); *Carver*, 160 Ariz. at 175.

### 3.      Punitive damages claim

**¶54**      The Atkinses argue the superior court erred by granting Snell's motion for summary judgment on punitive damages because the Atkinses "cited over 54 facts supporting an award of punitive damages,"

demonstrating Snell's conscious choice to subordinate their legal rights and best interests to those of Zeller. As an initial matter, the Atkinses contend the superior court is bound by our decision on their motion to dismiss. *See Atkins I*, 2012 WL 6720355, at *8, ¶ 36 ("Atkins pled sufficient facts to support his claim for punitive damages."). We stress, however, that the superior court reviews a Rule 12(b)(6) motion under a different standard of review: all facts plead are assumed to be true. *See, e.g., Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008) (in reviewing the complaint's dismissal, we "assume the truth of the well-pled factual allegations and indulge all reasonable inferences therefrom"). On a Rule 56 motion, however, the court reviews the facts in a light most favorable to the non-moving party and considers whether the parties presented a "genuine dispute as to any material fact." *See* Rule 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 310 (1990).

¶55        Because punitive damages are "only to be awarded in the most egregious of cases, where there is reprehensible conduct combined with an evil mind over and above that required for commission of a tort," the Atkinses must show by clear and convincing evidence "an 'evil mind' and aggravated and outrageous conduct." *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 331-32 (1986). Such conduct is to involve "some element of outrage similar to that usually found in crime." *Rawlings v. Apodaca*, 151 Ariz. 149, 162 (1986).

¶56        There is no evidence in the record of a relationship between Snell and Zeller that would cause Snell to seek to benefit Zeller. It further includes no evidence showing the "evil mind" requirement for punitive damages. In a 2013 deposition, Kort testified that Snell's analysis regarding fairness and equity was rooted in its concern for the strength and likelihood of success for the Atkinses. In response to a question about his discussion with Barry of the "pros and cons of a jury trial versus a bench trial," Kort stated he repeatedly disclosed his opinion to Barry and further explained:

> [T]he fact is that Mr. Zeller provided repeated loans to Mr. and Mrs. Atkins for a variety of reasons including buying their house. And they did not repay several of those loans. And at least this loan $220,000 allowed essentially them to keep the law firm of their choice and go exact a very beneficial settlement, six and a half million dollars or so, that Barry and Missy netted. To try to argue because of this Florida statute they weren't obligated to repay Mr. Zeller under the contract that Barry prepared, that's a tough argument . . . to make to any trier of fact, whether it be a judge or a jury.

¶57 Bivens testified similarly that, during a telephone call with Mr. Hayden, Barry, and Kort, they realized the advantage the Florida usury statute provided as leverage in the pleadings and negotiations. Bivens also agreed about the difficulty of arguing, whether to a judge or a jury, that Zeller's $220,000 loan, which resulted in Barry receiving $6.5 million dollars, did not need to be repaid. As the superior court recognized, "[t]his is a negligence case about strategy; not about punitive damages."

¶58 The superior court properly granted Snell's motions for summary judgment.

### D. The superior court acted within its discretion when it awarded sanctions and fees to Snell.

¶59 The Atkinses argue that their requests for the superior court to accord the PNA full faith and credit were proper because the PNA was entitled to this treatment as a matter of law and awarding attorneys' fees and costs "related to this issue" was error. Maverick made no separate argument regarding this claim. We review the superior court's rulings on sanctions for abuse of discretion. *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 410, ¶ 113 (App. 2012).

¶60 The superior court granted Snell the sanctions it requested against the Atkinses for their efforts to prevent discovery and motion practice related to the PNA. The court also held Maverick jointly and severally liable with the Atkinses for Snell's reasonable fees incurred in responding to any motions relating to the enforceability of the PNA signed by Maverick's attorney.

¶61 Because the Atkinses did not present any argument regarding discovery, they waived challenging any resulting award on appeal. *See City of Phoenix v. Fields*, 219 Ariz. 568, 573, ¶ 23 (2009) (citation omitted) ("Generally, we do not address arguments raised in the trial court but not in the court of appeals."). Because Maverick did not challenge the issue of sanctions on appeal, it also waived the issue. *See Schabel*, 186 Ariz. at 167.

¶62 The Atkinses argue the sanctions based on the PNA were awarded in error. We disagree. In August 2015, the superior court found two material issues of fact requiring a jury determination, even though the PNA had been reduced to a judgment. First, the Atkinses were not divorced at that time and it was unclear whether they intended the judgment to become effective without first obtaining a decree of dissolution of their marriage. Second, even if the PNA, reduced to a judgment, went into effect, it was ambiguous whether the Atkinses abandoned it, making

17

the PNA unenforceable. The court also correctly noted that the subsequent domestication would not necessarily turn an unenforceable judgment into an enforceable one.

¶63 Considering the Atkinses filed numerous motions subsequent to the superior court's August 2015 ruling, we conclude the superior court did not abuse its discretion in granting sanctions. *See Cal X-Tra*, 229 Ariz. at 410, ¶ 113.

## II. The Appeal Filed by Maverick

¶64 Maverick argues the superior court erred by granting a directed verdict to Snell on Maverick's claim for legal malpractice because: 1) Maverick provided sufficient expert testimony that Snell "gave Maverick negligent advice"; and 2) Maverick sufficiently alleged damages independent of Barry and Missy to prevail on its claim.

¶65 "[A] plaintiff asserting legal malpractice must prove the existence of a duty, breach of duty, that the defendant's negligence was the actual and proximate cause of injury, and the 'nature and extent' of damages." *Glaze v. Larsen*, 207 Ariz. 26, 29, ¶ 12 (2004). Actual injury or damages must be "ascertainable, and not speculative or contingent." *Id.* at ¶ 13; *Tullar v. Walter L. Henderson, P.C.*, 168 Ariz. 577, 579 (App. 1991) (concluding "ascertainable and nonspeculative damages" are required before a cause of action for professional negligence accrues). A directed verdict is properly granted when a party fails to establish damages as an essential element of its claim. *See Mammas v. Oro Valley Townhouses, Inc.*, 131 Ariz. 121, 124 (App. 1981).

¶66 At trial, Mitchell Carter, an expert witness on damages, testified only to damages sustained by Barry; he did not opine on damages separately suffered by Maverick. Maverick's attorney did not ask Carter any questions. Maverick also presented no evidence it paid Zeller, or Snell, although it argues it suffered damages due to its consent to the settlement agreement executed in the *Zeller* litigation, "culminat[ing] in the loss of its house." The IRS, however, held a senior lien on the house worth in excess of $1.5 million for non-payment of federal income tax assessed in 2006. Further, Barry and Missy Atkins signed the settlement agreement individually and on behalf of Maverick as its members. Substantial evidence supported finding that Maverick was the "alter ego" of Barry and Missy because the financial expert witness, David Perry, testified to substantial commingling of assets, no separate business activity by

Maverick, no arm's length transactions, Maverick's paying of the Atkinses' personal expenses, and lack of corporate formalities.

**¶67** The superior court, thus, properly granted a directed verdict in favor of Snell because Maverick failed to establish damages separate from the Atkinses.[3]

**¶68** Any evidentiary rulings unrelated to damages are mooted by Maverick's inability to prove the damages element of its claim. *See Arpaio v. Maricopa Cty. Bd. of Supervisors*, 225 Ariz. 358, 361, ¶ 7 (App. 2010) (citation omitted) ("A case becomes moot when an event occurs which would cause the outcome of the appeal to have no practical effect on the parties.").

**¶69** Because it is not necessary to our ruling, we decline to reach Maverick's other arguments. *See State v. Hardwick*, 183 Ariz. 649, 657 (App. 1995) (declining to reach the remaining issues once the court found grounds for resolution,); *State v. Boteo-Flores*, 230 Ariz. 551, 553, ¶ 7 (App. 2012) (stating an appellate court will uphold the superior court's ruling if correct for any reason).

## III.    An Appellate Challenge to Snell's Counterclaim was Waived

**¶70** In their opening brief, Maverick made no legal argument as to Snell's counterclaim, and the Atkinses merely stated: "The jury's verdict on the counterclaim should be reversed because Defendants would not be entitled to compensation for breaching their fiduciary duties to Appellants by rendering deficient, incomplete, false and misleading legal advice causing damages to Appellants." This statement lacks reference to legal authority and the record. *See* ARCAP 13(a)(7)(A). The issue is, therefore, waived. *See Carver*, 160 Ariz. at 175; *Schabel*, 186 Ariz. at 167.

## IV.    Attorneys' Fees and Costs on Appeal

**¶71** Snell and Maverick request we grant an award of their reasonable attorneys' fees and costs incurred on appeal under A.R.S. § 12-349. Snell additionally raises Rule 11 and A.R.S. § 12-341 as a ground

---

[3]    On appeal, Maverick does not offer any separate argument that it should be granted a new trial, although it joined the Atkinses' Rule 59 motion. Because the Atkinses do not argue Maverick suffered damages distinct from the Atkinses as a basis for a new trial, Maverick waived any such argument on appeal. *See* ARCAP 13(a)(7)(A); *Carver*, 160 Ariz. at 175; *Schabel*, 186 Ariz. at 167.

for awarding its attorneys' fees against Maverick.  Maverick, however, did not raise issues sounding in contract.  In the exercise of our discretion, we decline to award either party their attorneys' fees on appeal.  We award Snell its costs on appeal upon compliance with ARCAP 21.

## CONCLUSION

**¶72**　　　　For the reasons stated above, we affirm the superior court's judgment in favor of Snell.



AMY M. WOOD • Clerk of the Court
FILED:  AA